# CHARLESTON.

## BELL v. PEABODY INSURANCE CO.

### Decided March 30, 1901.

1. AGENT—*Insurance Contract.*

    An insurance agent cannot contract for insurance so as to bind his company without real or apparent authority therefor. (p. 440).

2. AGENT'S AUTHORITY—*Evidence.*

    Such apparent authority must be based upon something tangible, such as the possession by the agent of blank policies signed by the officers of the company, or the declarations of the agent to the effect that he has such authority, coupled with the fact that such authority has been recognized by the company by issuing policies on such contracts, or by permitting the agent to so continue its business after it has notice of such representations. (p. 441.)

3. ORAL CONTRACT—*Must be Mutual.*

    In such case, to constitute a complete oral contract, the minds of the insured and the insurer must come together in mutual agreement on every material point constituting a contract. (p. 441).

Appeal from Circuit Court, Greenbrier County.

Bill by Henry T. Bell against the Peabody Insurance Company. Decree for defendant, and plaintiff appeals.

*Affirmed.*

PRESTON & WALLACE, for appellant.

JOHN W. HARRIS, for appellee.

McWHORTER, JUDGE:

This is a suit in chancery instituted by Henry T. Bell in the circuit court of Greenbrier County against the Peabody Insurance Company, a corporation, for the enforcement of specific performance of an oral contract of insurance alleged to have been made on the 31st of July, 1897, by J. W. A. Ford, as agent of the defendant company, whereby he agreed for and on behalf of said company to insure the stock of goods of said plaintiff in the said company in the sum of one thousand five hundred dollars in addition to three thousand five hundred dollars, which plaintiff already had on said goods. Plaintiff alleges in his bill that on said 31st day of July, 1897, he applied to said agent for said insurance, and said agent undertook to and did insure said goods in said defendant company for the sum of one thousand five hundred dollars, at the rate of one dollar and seventy-five cents per one hundred dollars, the premium at said rate amounting to the sum of twenty-six dollars and twenty-five cents, and that by agreement plaintiff was given thirty days within which to pay said premium, and said agent agreed that he would fix up said insurance that evening, the 31st of July; that by reason of said contract to insure, plaintiff made no effort to get additional insurance in any other company and relied upon said contract for the additional insurance; that but for said contract plaintiff would have secured as he easily could have done said additional insurance in some other good and reliable company; that on the morning of the 3d of August, 1897, about daylight, his stock of goods was destroyed by fire, a total loss; that he immediately notified and informed said defendant company of said loss as required of parties insured in case of loss; that within the thirty days agreed upon for the payment by plaintiff of the premium on said insurance, plaintiff made a lawful tender to said Ford, agent, of the twenty-six dollars and twenty-five cents premium, in full payment thereof, but said agent declined and refused to take it, and still refused, that plaintiff had ever been since said tender was made ready to pay the same; that defendant had declined and wholly refused to pay plaintiff the amount of said insurance or any part of it, and that the whole of same was justly due him; that plaintiff was without remedy save in a court of equity, and prayed that said agreement and contract

so made on the 31st day of July, 1897, be specifically performed and carried into execution by the defendant; that it be compelled to pay plaintiff one thousand five hundred dollars, the amount of said insurance with interest from October 3, 1897, that being the day said loss would have been payable under the rules and regulations of the defendant company had said company not refused to comply with its said contract, and for general relief. Defendant filed its demurrer, and without waiving its demurrer tendered its answer, which is filed, plaintiff joining in the demurrer, and replied generally to the answer. The answer denied the material allegations of the bill; denied that Ford was the general agent of the defendant, averring that he was a mere application agent, that he was not authorized to contract with parties for insurance as alleged, nor to adjust rates, and so far as defendant knew or believed said Ford never assumed to do so; that he never had authority from defendant company to bind it by issuing policies in its name or to contract to issue them; that his only authority was to solicit applications or proposals for insurance to be submitted to the home office for acceptance or rejection by the company; that respondent was informed that in the particular instance said Ford did not contract nor claim the power to contract with plaintiff for insurance, but simply told him he would submit to the company a proposal made by Bell; that the proposal never was accepted and no policy written by respondent for Bell, and filed with the answer a letter from plaintiff speaking of the matter as an application for insurance and not as a contract for insurance; that the only communication so far as respondent was informed ever written by Ford upon the subject prior to the alleged loss was a letter addressed not to respondent but to J. F. Paull, in which Ford submitted to Paull the question as to whether he would write the plaintiff one thousand five hundred dollars additional insurance at a rate less than had been asked by said Ford, naming the rates; that although Paull was the secretary of the defendant company he was an insurance broker and the representative of other companies, and had as such theretofore issued policies in such other companies and sent the same to Ford; that said Ford knew at the time he wrote this letter that by reason of other insurance upon contiguous property the defendant would not issue a policy of its own on the property of Bell, and that if Bell's proposition was accepted the risk would be placed in another company; and

even this application to Paull was not received until the 5th day of August, two days after the alleged fire, and filed a copy of said letter. Denied knowledge of the alleged fire and the loss of said property as alleged in the bill, and denied all liability or obligation to plaintiff, and prayed to be dismissed with its costs, etc. Depositions were taken and filed in the cause both for plaintiff and defendant, and on the 13th of December, 1898, the cause was heard, on the bill, the demurrer and joinder therein, the answer and replication thereto, the depositions of witnesses, the exhibits filed, orders theretofore entered and upon arguments of counsel, upon consideration whereof the court overruled the demurrer to the bill and dismissed the bill. From which decree plaintiff appealed to this Court, and says the court erred in not enforcing the oral contract made by plaintiff made with defendant's agent, J. W. A. Ford, for insurance. It is claimed by appellant that he made a contract with Ford, the agent of defendant company, for insurance on his stock of goods at the agreed rate of one and three-fourths per cent., while it is denied by defendant that the agent made any such contract or had any authority to make any contract binding upon the defendant, and the defendant contends that he was simply a soliciting agent receiving applications to be submitted to the company for its acceptance or rejection. Appellant relies very strongly on *Croft* v. *Ins. Co.,* 40 W. Va. 508. In that case the agents were invested with full power and authority to contract and issue policies, they were entrusted with blank policies signed by the officers of the company, with authority to negotiate policies and issue them without referring them to the companies they represented, and it was there held that when such agents with the applicant completed a contract, had a full understanding as to every element going to make up a complete contract, the same could be enforced. It is there said that "it is lawful and binding on the company selected by the agent when they have policies in blank, to issue to whom they choose." In case at bar it is not pretended that there was even apparent authority vested in Ford, the agent, to contract for insurance or fix rates, except the mere fact that he was advertised as the agent of the Peabody Insurance Company, had no blank policies in his possession signed up ready to be filled out and delivered. In *Sheppard* v. *Ins. Co.,* 21 W. Va. at page 381, it is said, "An insurance company establishing a local agency, must be held responsible to the parties with whom

they transact business, for the acts and declarations of the
agent, within the scope of his employment, as if they proceeded
from the principal," and it is there further said, "The decisions
sustain the position that the company is bound by all the acts
of its agent within the scope of his apparent authority, unless
notice is given the assured that with reference to matters within
the scope of his apparent authority certain limitations are im-
posed upon the agent. The question is, not what the powers of
the agent in fact were, but what were his apparent powers, that
is, what had the assured a right to believe were given to the
agent," and cites divers authorities. What is *apparent* author-
ity? In the case of *Croft* v. *Ins. Co., supra,* the fact that the
agents had in their possession blank policies of various com-
panies signed up by the officers thereof ready to be filled out and
delivered, was deemed sufficient apparent authority to contract
insurance and select or choose in what company or companies such
insurance should be placed. The "apparent authority" men-
tioned must be understood in a legal sense. There must be
something on which to base the belief that the agent has author-
ity to contract. It is not contended that Ford claimed affirma-
tively to have authority to contract insurance. It is not shown
nor claimed that he had in his possession any written authority
from the company, nor that he had anything from which it
could be inferred that such authority vested in him. And plain-
tiff in his testimony when asked to "State the character of Ford's
agency," answered, "He solicited insurance for the company."
Ford had been agent for the defendant company in the town of
Lewisburg for a great many years. He was asked on cross-ex-
amination "Did you ever collect premiums for insurance when
applications were made to you before policies were delivered?"
answered, "I never do. Parties have proposed to pay the pre-
mium, but I have invariably told them they could pay the pre-
mium when the policy was delivered." If it had been well
established that the agent had full power and authority to con-
tract the insurance and fix the rates, the evidence might be suf-
ficient to hold the company liable. But the evidence is very con-
flicting as to the fact of a complete contract even on the theory
that the agent had been authorized to make it. It is possible that
the plaintiff taking it for granted that the agent was so author-
ized was not as careful as he otherwise would have been, and
failed to have the understanding mutual and made as clear as it

might have been. While the agent on the other hand having full knowledge that he was not authorized to fix the rate, nor to contract for the insurance, and supposing that plaintiff was likewise aware of the fact, was perhaps not as careful in accepting the application as he should have been, and may have thereby caused the plaintiff to be misled. One thing can hardly be disputed from the evidence, their minds did not meet, whatever plaintiff's understanding might have been. It is shown beyond question that the agent, Ford, had no authority beyond soliciting applications for insurance, in all cases to be submitted to the company for acceptance or rejection. And it is not shown that said agent ever claimed affirmatively to be authorized to fix rates or contract insurance, and in his testimony he denies making the contract, and claims that he only took the application and agreed to report the same to the company for its action. And as to whether his acts were such as to mislead the plaintiff to such extent as to make the company liable in the matter here in issue, the evidence is so conflicting as to bring the case well within the rule of *Yoke* v. *Smith,* 27 W. Va. 639.

There seems to be no error in the decree, and the same is affirmed.

*Affirmed.*