DENNIS R. KNAPP

*v.*

INDEPENDENCE LIFE AND ACCIDENT INSURANCE COMPANY

(No. 12054)

Submitted January 24, 1961.    Decided March 7, 1961.

164

GIVEN, BROWNING, JUDGES, dissenting.

*Campbell, McNeer, Woods & Bagley, Selden S. Mc-Neer, Jr.,* for plaintiff in error.

*Lane & Preiser, John J. Lane,* for defendant in error.

HAYMOND, PRESIDENT:

In this action of assumpsit, instituted in the Circuit Court of Kanawha County in July 1959, the plaintiff, Dennis R. Knapp, seeks a recovery from the defendant, Independence Life and Accident Insurance Company, a corporation, in the sum of $2,698.30 for necessary surgical, medical and hospital expenses incurred by the plaintiff in an effort to effect the cure of his wife who had contracted the disease of cancer. The plaintiff alleged in his declaration that the defendant owes him that amount under the terms and provisions of a policy of insurance which it issued to him on March 22, 1956 and on which the plaintiff bases his right to a recovery against the defendant in this action.

To the declaration of the plaintiff the defendant filed its plea of the general issue and its specifications of defense, and to those pleadings the plaintiff filed his replication. A pretrial order was entered on February 25, 1960, and at that time all facts pertinent to the issues in the case were stipulated by the parties except the facts relating to the question whether the plaintiff received either or both of two certain formal amendments or riders to the policy of insurance by which the coverage for cancer benefits was limited to $250.00 or $500.00, which amendments or riders the defendant alleged were mailed to the plaintiff; and that factual question was reserved for jury determination. Upon the trial of the case the jury found that the plaintiff did not receive any such amendments or riders. All other matters in controversy were submitted to the circuit court in lieu of the jury. The court found in favor of the plaintiff and on May 2, 1960, rendered judgment in his favor in the sum of $2,698.30, with interest and costs. To that judgment this Court granted this writ of error and supersedeas upon the application of the defendant.

On March 22, 1956, the defendant issued a policy of insurance to the plaintiff and the members of his family against loss by reason of surgical, medical and hospital expenses incurred in an effort to cure the members of his family of certain diseases, eight in number, and in particular the disease of poliomyelitis. The disease of cancer was not included in the original policy, the face amount of which was $5,000.00, with an annual increase of $1,000.00 per year until the maximum amount should be increased to $10,000.00 during the fifth policy year.

Sometime prior to the fall of 1957 the plaintiff received by mail from the home office of the defendant a letter informing him that his poliomyelitis and other dread diseases policy provided maximum benefits for poliomyelitis of $10,000.00 which increased in an amount of $1,000.00 each year until it shall be increased to the amount of $15,000.00 at no additional cost and

requested the plaintiff to attach the rider to that effect to the policy. This rider, which accompanied the letter and was designated as a rider increasing basic sum for poliomyelitis provided that, without any increase in premium, the policy to which the rider should be attached "is hereby amended as follows: Part One of such policy is hereby stricken therefrom and the following indented and quoted language is hereby substituted in place thereof: 'PART ONE—BASIC SUMS AND INCREASES THEREIN 1. The Basic Sum for each of the diseases specified in Part Two, with the exception of Poliomyelitis, is $5,000.00. Such Basic Sum will be increased by $1,000.00 at the end of each consecutive policy year during which this policy has been continuously in force until it shall have been increased to $10,000. * * * . 2. The Basic Sum for Poliomyelitis is $10,000.00. Such Basic Sum will be increased by $1,000.00 at the end of each consecutive policy year during which this policy has been continuously in force until it shall have been increased to $15,000.00, * * *.' " The rider further provided that nothing contained in it should be held to waive, alter, vary or extend any of the terms or provisions of the policy, except as stated in the rider; and it was signed by the president and the secretary of the company.

In October 1957, after the plaintiff had received the foregoing rider which he attached to his policy, he received by mail from the home office of the defendant a form letter which contained, among others, these statements: "Dear Policyholder: In Re: Policy No. FD You are a holder of an Independence family Polio and other Dread Diseases Policy. The Company has recently added Cancer Benefits to your policy, *without any increase in premium.* * * *." The letter then informed the plaintiff of a new family life insurance policy obtainable from the defendant which would insure for one guaranteed low premium the father, the mother and all the children between the ages of fifteen days and twenty one years, and requested the plaintiff, if interested in such policy, to complete and mail to the

company a card enclosed with the letter. The letter was signed by R. C. Day, Vice President of the defendant. Upon receipt of this letter the plaintiff attached it to his policy of insurance.

After receiving the foregoing letter the plaintiff renewed the policy for at least two additional periods of one year, paid a $10.00 premium for each renewal, and obtained receipts for each renewal which stated that cancer was included in the diseases covered by the policy. These renewal premiums were paid to, and the receipts were given by Ray W. Ellis, doing business as Ellis Insurance Agency, the broker who solicited and negotiated with the plaintiff in his purchase of the original policy of insurance.

Before the defendant mailed the plaintiff the second letter in October 1957, which was not accompanied by any rider, the defendant issued and sent to Coal River Insurance Agency, its local agent in the Charleston area which included Nitro where the plaintiff resided, a quantity of riders. Each of these riders specified that the amount of cancer coverage which had been added to the type of policy issued to the plaintiff was the sum of $250.00, and each of these riders contained the statement that it took effect July 1, 1957, or ninety days after the date of the policy, if the date of the policy was subsequent to June 30, 1957, directed the insured to attach the rider to his policy, and was signed by the president and the secretary of the insurer. In February or March, 1958, after the plaintiff had received the letter in October, 1957, the defendant issued and sent to its local agent a second quantity of riders. Each of those riders specified that the amount of cancer coverage had been increased from $250.00 to $500.00, contained the statement that it took effect May 1, 1958, or ninety days after the date of the policy, if the date of the policy was subsequent to April 30, 1958, directed the insured to attach the rider to his policy, and was signed by the president and the secretary of the insurer.

The evidence shows that the established practice of the local agent of the defendant was to send the riders to Ray W. Ellis, the broker who negotiated the original policy; but if that course was followed it appears, from the uncontradicted testimony of the plaintiff, and the jury so found, that the respective riders which provided cancer coverage of $250.00 and increased that amount to $500.00 were never received by the plaintiff; and it also appears that he was not informed about them until after he submitted his proof of claim to the defendant on or about May 27, 1959.

By letter dated June 11, 1959, the defendant denied liability for any amount in excess of $500.00 and informed the plaintiff of the rider which limited its liability to the plaintiff for cancer benefits to that amount. On June 15, 1959, the defendant sent its draft to the plaintiff in the amount of $500.00. The plaintiff instituted this action on July 6, 1959, which was before the expiration of sixty days from the date the plaintiff filed his proof of loss, and on July 24, 1959, he returned the draft to the defendant and notified it that he refused to accept the amount of the draft in settlement of his claim.

The stipulation contains numerous contentions in behalf of each of the respective parties. Among the contentions of the plaintiff are the contentions that as the letter received by him from the defendant in October 1957 contained no restrictions or limitations, the amount of coverage for cancer benefits was the same as that contained in the policy for the other diseases covered by the policy; that, as he did not receive any subsequent amendments or riders, and as he relied upon the foregoing letter, he did not obtain other insurance protection against the disease of cancer; and that for that reason the defendant is estopped from asserting any construction of the letter received by the plaintiff in October 1957 which would limit its liability to the plaintiff for insurance protection against the disease of cancer to any amount less than the amount of the coverage provided by the policy.

The defendant assigns as error the action of the circuit court in holding (1) that the broker who solicited the policy of insurance was the agent of the defendant and (2) that the defendant was estopped to deny the coverage asserted by the plaintiff.

The contention of the defendant that the broker who solicited the insurance was the agent of the plaintiff and not the agent of the defendant is disposed of, adversely to the defendant, by Section 13, Article 7, Chapter 33, Code, 1931, now Section 23, Article 12, Chapter 33, Code, 1931, as amended by Article 12, Chapter 97, Acts of the Legislature, Regular Session, 1957. That section provides that any person who shall solicit within this State an application for insurance shall, in any controversy between the insured or his beneficiary and the insurer issuing any policy upon such application, be regarded as the agent of the insurer and not the agent of the insured. See *Moore v. United Benefit Life Insurance Company,* 145 W. Va. 549, 115 S. E. 2d 311; *Meadows v. Peoples Life Insurance Company,* 118 W. Va. 404, 191 S. E. 852. See also *Coles v. Jefferson Insurance Company,* 41 W. Va. 261, 23 S. E. 732. The position of the defendant is that although under the statute the person who solicits the application for insurance is regarded as the agent of the insurer he is such agent in any controversy between the insurer and the insured or his beneficiary only to the extent that the application is involved and that the statute does not apply to a controversy in which other questions or issues are in dispute. This position is clearly untenable and can not be given judicial sanction. It is obvious from the clear and unambiguous language of the statute that the solicitor of the application for insurance should be regarded for all purposes as the agent of the insurer in any controversy between it and the insured or his beneficiary.

The undisputed evidence is that before the plaintiff received the form letter in October 1957, advising him that the defendant had recently added cancer benefits to his policy without specifying the amount of such cover-

age, he had received a somewhat similar type of letter accompanied by a rider designated as such expressly amending his policy and specifying the character of the amendment which increased the basic sum for poliomyelitis from $5,000.00 to $10,000.00 and expressly directed the insured to attach it, as a rider, to his policy. This transaction should have informed the plaintiff of the method employed by the defendant in changing or adding coverage to the policy which contained the express provision that "No change in this policy shall be valid unless approved by an executive officer of the Company and such approval be endorsed hereon." Having learned of the manner in which the basic sum for poliomyelitis was changed by a particular rider and not by the form letter which accompanied it, the plaintiff should have known that the defendant did not intend to change any provision of his policy by a form letter which did not mention or transmit a rider to be employed for that purpose. As he had, in at least one instance, been advised of the method used by the defendant to change its policies, he should have understood that to effect a change a rider would be necessary. In that situation there was no justification for any assumption or belief, by the plaintiff, however well intentioned, that a change in his policy to add cancer coverage would or could be made by the form letter sent to him in October, 1957. That letter did not specify even the amount of the recently added cancer benefits or the effective date. It was primarily designed to interest the plaintiff in the purchase of life insurance under a new Independence Family Life Insurance Policy offered by the defendant and three of its five paragraphs were devoted to a detailed description of that type of policy and the advantages which it would provide.

It is evident that there was no common understanding or agreement between the plaintiff and the defendant as to the meaning and the effect of the form letter of October 1957. The plaintiff apparently entertained, without justification, the mistaken belief that

it operated to change his policy to cover cancer benefits in an amount equal to the basic sum for the other enumerated diseases. On the contrary it is obvious that the defendant never intended to add cancer benefits to the policy in an amount in excess of the sum of $500.00 as expressly provided in the second rider which it sent to its local agent and which was to become effective on May 1, 1958. This is established by its action in preparing and sending to its local agent the two riders, one providing cancer coverage for $250.00 and the other such coverage for $500.00 for delivery to the plaintiff. This delivery was never made. The receipt of those riders by the broker who solicited the insurance, being the agent of the defendant and not the agent of the plaintiff, and who did not deliver either of the riders to the plaintiff or inform him of their existence, did not constitute a delivery to the plaintiff who, in fact, did not know that the riders existed until after he had submitted his claim for cancer benefits to the defendant. In this situation there was no meeting of minds of the plaintiff and defendant concerning any cancer coverage to be added by any change in or amendment of the policy.

The principle is well established that a contract of insurance must be assented to by both parties either in person or by their agents. 29 Am. Jur., Insurance, Section 192. There must be a meeting of the minds of the parties as to the essential terms of the contract. *Jones v. The Standard Fire Insurance Company of Hartford, Connecticut,* 116 W. Va. 597, 182 S. E. 800; *Johnson v. Dixie Fire Insurance Company,* 108 W. Va. 512, 152 S. E. 11; *Meadows v. American Eagle Fire Insurance Company,* 104 W. Va. 580, 140 S. E. 552; *Bell v. Peabody Insurance Company,* 49 W. Va. 437, 38 S. E. 541; *Croft v. Hanover Fire Insurance Company,* 40 W. Va. 508, 21 S. E. 854, 52 Am. St. Rep. 902; *McCully's Adm'r v. Phoenix Mutual Life Insurance Company,* 18 W. Va. 782. In general the essential elements of the contract are the subject matter of the insurance, the risk insured against, the commence-

ment and the period of the risk undertaken by the insurer, the amount of the insurance, and the premium and the time of its payment. 29 Am. Jur., Insurance, Sections 191 and 192. The form letter which the plaintiff received in October 1957 did not mention the essential elements of the amount of the added cancer benefits or the time at which they would commence and become effective.

The form letter of October 1957 was not a rider or other means of amendment of the policy of insurance issued to the plaintiff. Instead it was in effect an advertisement of the new family life insurance policy issuable by the defendant which solicited the purchase of such policy by the plaintiff. This is clear from its terms and the plaintiff should have recognized and treated it for what it was: an advertisement designed to induce the plaintiff to purchase a policy of life insurance from the defendant. As the plaintiff was or should have been acquainted with the method of changing his policy employed by the defendant which was by rider to be attached to the policy, he should have known, in the absence of any accompanying rider, that the letter did not constitute a change in or an amendment of the policy. The letter merely served to put him on inquiry as to how, when and in what amount the cancer coverage had been added to his policy. It is evident that it was the purpose of the defendant to make effective the added coverage by the rider in the amount of $250.00 and the subsequent rider in the amount of $500.00 which were never delivered to or received by the plaintiff and of which he was not aware until long after they had been sent by the defendant to its local agent.

It is well settled in the law of insurance that ordinarily an advertisement issued for the purpose of soliciting insurance does not constitute a part of the contract when not attached to the policy or referred to in it. 29 Am. Jur., Insurance, Section 270. This rule applies to the form letter of October 1957 and operates to prevent it from being regarded as a part or

an amendment of or an addition to the policy of insurance held by the plaintiff.

The doctrine of estoppel is not applicable to the facts of this case. In the law of insurance the elements of an estoppel against an insurer are conduct or acts on the part of the insurer which are sufficient to justify a reasonable belief on the part of the insured that the insurer will not insist on a compliance with the provisions of the policy and that the insured in reliance upon such conduct or acts has changed his position to his detriment. See *Globe Mutual Life Insurance Company of New York v. Wolff,* 95 U. S. 326, 24 L. Ed. 387; *Coleman Furniture Corporation v. Home Insurance Company,* 4 F. Supp. 794, affirmed 67 F. 2d 347, certiorari denied, 291 U.S. 669, 54 S. Ct. 453, 78 L. Ed. 1059; *Security Insurance Company v. Fay,* 22 Mich. 467, 7 Am. Rep. 670; *Everett v. Metropolitan Life Insurance Company,* 129 Neb. 386, 261 N. W. 575; *Continental Insurance Company of New York v. Portwood,* 184 Okla. 22, 84 P. 2d 435; 16 Appleman, Insurance Law and Practice, Section 9088; 6 Couch on Insurance, Second Edition, Sections 32:270, 32:271, 32:272; Vance on Insurance, Third Edition, Chapter 9, Section 88; 45 C. J. S., Insurance, Section 704a. Before the defendant may be estopped to deny that the cancer coverage of the policy was increased to the basic amount provided by the policy or in an amount in excess of $500.00 it must have been guilty of some fraud or must have done something by which the plaintiff was misled to his prejudice. *Morgan v. American Central Insurance Company,* 80 W. Va. 1, 92 S. E. 84, 1917D L.R.A. 1049. Nothing of that kind appears in the record in this case. The form letter of October 1957 merely informed the plaintiff that cancer coverage, without specifying the amount, had been recently added to his policy. It did not state how or when such coverage had been added. At that time, by the rider in the amount of $250.00, such coverage had been added to the policy, although that fact was not known to the plaintiff until after he incurred the loss which he now

seeks to recover. That letter contains no misrepresentation or false statement of fact. It simply stated that some cancer coverage had been added without telling the plaintiff how, when or in what amount, and it operated merely to put him on inquiry as to those factors. There is no evidence to show that the plaintiff relied on any misleading act or statement of the defendant or that he changed his position to his prejudice. Though the written stipulation between the parties contains his contention that, in reliance upon the coverage indicated by the letter, he failed to obtain such coverage, he offered no testimony to show that he actually believed that the letter of October 1957 had changed his policy to the extent of adding cancer coverage equal to the basic amounts provided by the policy for other designated diseases or in an amount in excess of $500.00, or that he made any inquiry as to the effect of the form letter or the issuance of any rider in connection with it, or that he attempted or failed to obtain cancer coverage with or without the payment of any additional premium by reason of any statement contained in the form letter of October 1957. An insurer is not estopped unless the insured has relied on the action of the insurer and his situation has been changed as a result of the action of the insurer and fraud upon the insured would result if the insurer would be permitted to retract or repudiate its previous action. *Coleman Furniture Corporation v. Home Insurance Company,* 4 F. Supp. 794, affirmed 67 F. 2d 347, certiorari denied, 291 U. S. 669, 54 S. Ct. 453, 78 L. Ed. 1059. It has also been held that a contract of insurance can not be created by estoppel. *Maryland Casualty Company v. Industrial Commission,* 230 Wis. 363, 284 N. W. 36; 16 Appleman, Insurance Law and Practice, Section 9090.

As the form letter of October 1957, on which the plaintiff bases his claim, did not effect, in the manner required by the policy, a change in its provisions or add cancer to the coverage provided by the policy and does not cover the claim of the plaintiff, and as the

defendant is not estopped to deny that the coverage afforded the plaintiff by the policy does not exceed the sum of $500.00, the judgment of the circuit court is reversed and this case is remanded to that court for a new trial which is hereby awarded the defendant.

*Reversed and remanded.*

GIVEN, JUDGE, dissenting:

Being of the view that the facts of this case, really not in dispute, do not bring it within the principles applied thereto, except as to Point 1 of the Syllabus, I am forced to dissent.

To properly appraise the problems involved, it must be kept in mind that the original insurance policy provided only "Indemnity for expenses for treatment" for certain so-called "dread diseases", including poliomyelitis but not including cancer. Except in a single instance not here material, involving a different disease, covered by a different rider, the amount of indemnity as to "expenses for treatment" incurred as to each of the several diseases covered was exactly the same, all being covered by the one definite provision as to the extent of liability. Therefore, it is clear that the only real question to be decided is whether the so-called letter or rider received by the plaintiff in October, 1957, had the effect, either by agreement or estoppel, of placing cancer within the coverage of the policy. Before dismissing or sloughing off the effects of that paper as an advertisement, it should receive a more careful analysis or appraisement as to its qualitative characteristics.

The so-called advertisement was signed by the vice president of the defendant company; it was addressed and mailed to plaintiff, as a "policyholder"; it stated emphatically, without reservation, that "The Company has recently added Cancer Benefits to your policy, without any increase in premium"; and that this was "in accord with our Company practice * * *". That this statement, representation and assurance was

received by the plaintiff and attached to the original policy, in the manner provided by the original policy, as was done in the case of the previous rider not here involved, is not questioned. How could language be more certain and exact than ''The Company has recently added Cancer Benefits to your policy''? The quoted statement did not refer, by no possible view could have referred, to ''the new Independence Family Life Insurance Policy'', an altogether different type of insurance policy, which was then being advertised and sold by defendant.

Neither is it questioned that plaintiff subsequently twice renewed the policy, paying the regular premiums demanded by the defendant, and the inference is clear, I think, that he did so only because of reliance on the statements of the defendant company. There is no denial of that fact. Each of the receipts which in form were also notices of renewal premium due dates, mailed by defendant to the insured, gave the policy number, and contained this emphatic statement, representation and assurance: ''All these specified diseases are covered Cancer; Diphtheria; Encephalitis; Leukemia; Meningococcic; Meningitis; Polio; Rabies; Scarlet Fever; Smallpox; Tetanus''. Thus cancer was expressly and positively placed in the same category as the other covered diseases. It may be significant that the apparent generosity of the defendant in adding cancer to the coverage was occasioned by the appearance and effect of the Salk polio vaccine, which rendered the original policies of the class of that held by plaintiff of much less value, much less saleable. The action was for the purpose of avoiding the lapsing or cancellation of existing policies. It had that exact effect as to the policy owned by plaintiff.

It is true, of course, that the so-called letter contained certain other statements which could be properly referred to as advertising, mentioning the ''Family Life'' policy. I would deem it useless, though, to argue or attempt to cite authorities to the effect that any such references would not vitiate the effects of a

true rider. Moreover, undoubtedly an advertisement could be so worded and projected as to constitute a basis, at least, for an estoppel. Neither do I deem it necessary to attempt to answer, in this memorandum, the contention made in the majority opinion to the effect that the original policy contract having been previously amended by a form rider not here involved, any subsequent amendment, particularly the one here involved, ought to have been or expected to have been consummated in the same manner. There is no exclusive way to effect a modification of a contract. It may be done even by parol or implication. It should be also kept in mind that the finding of the jury excludes from present consideration any question about the other supposed rider mailed to the agent of the insurer, but never received by the insured. That finding settled the only issue of fact formulated by the pretrial order, and the only issue of fact involved in the case.

Of course, if the question here considered is to be measured by the necessary elements of an original insurance contract, there must have been a meeting of minds as to the essential elements of the contract. The only facts relied on by the majority, as establishing a failure of the meeting of minds as to the rider in question, are that it "did not mention the essential elements of the amount of the added cancer benefits or the time at which they would commence and become effective". The contention last recited may be considered as resulting from an oversight, for the paper clearly and unquestionably says that such "Cancer Benefits" have recently been "added". As above pointed out, there was no necessity for mentioning any amount of cancer benefits, since the original policy covered "expenses for treatment" in the same manner and amount as to each of the diseases covered by the policy.

Considering the nature of the original policy, one for "expenses for treatment" only, applying alike to all diseases covered except the one disease covered by a different rider, it appears clear to me that the only

possible question was whether cancer should be included in the coverage. As to that, it can hardly be contended that there was not a meeting of minds. The defendant stated the proposition in the socalled letter of October, 1957. The insured accepted that very proposition or statement, not questioning its precise and exact meaning, attached it to the original policy, and relied on it as constituting a part of the policy. He thereafter paid the premiums demanded by the company. When considered in its true light, there appears no basis whatever for the conclusion that there was not a meeting of minds. There was in fact and truth complete consentience. Should any person, including an insurance company, be permitted to make such a solid, emphatic statement, representation and assurance and then, after having received additional moneys because thereof, be permitted to say there was no meeting of minds because something else could have been intended? That an existing contract may be modified, even by parol or by implication, there is not the least doubt. See *Azure v. Hunter,* 101 W. Va. 191, 132 S. E. 726; *Noyes v. Caperton,* 68 W. Va. 13, 69 S. E. 364; 44 C.J.S., Insurance, Section 260; 4 M.J., Contracts, Section 54; 29 Am. Jur., Insurance, Section 335. In 29 Am. Jur., Insurance, Section 359, it is stated: "* * * It is generally held, however, that agreements to renew need not be as definite as to terms as an agreement to issue a policy, since the agreement will be presumed to adopt and have reference to the terms of the existing or expiring policy, and these agreements have been upheld where there was no specific agreement as to terms * * *". It is more reasonable to say that where "expenses for treatment" incurred by an insured as to a certain disease, here cancer, are brought within coverage by a rider, that the parties "will be presumed to adopt and have reference" to the applicable provisions and terms of the original policy. Undoubtedly that was the true intention of the parties.

Though I should assume, for argument, there was no meeting of minds, I can not escape the conclusion that

the action on the part of the defendant constituted a clear and definite estoppel on the part of defendant to deny the modification, the inclusion of cancer within the coverage of the policy. This is definitely made to appear, not only by the language used, "Cancer Benefits" have been "added" to the policy, but also by the notices from the defendant to the insured, giving the correct number of the policy sold to the insured and advising that "cancer" is now "covered" by the policy, and by the receipt and acceptance of the payment of the premiums thereafter accruing and demanded by the defendant company. This fully and definitely, I believe, satisfies the test laid down by the majority as to the necessary elements of an estoppel within the meaning of insurance law. Who can say that the conduct of the defendant, in making and mailing the statement signed by the vice president of the defendant company, to the effect that "Cancer Benefits" have been "added", or that the premium notices to the same effect, were not "sufficient to justify a reasonable belief" that the facts stated were true, or who can deny, or even question, that the insured relied thereon, paying the renewal premiums as demanded by defendant? See 44 C.J.S., Section 275; 10 M.J., Insurance, Section 44. An examination of the authorities cited in the majority opinion will, I believe, clearly demonstrate that the plaintiff should not be precluded from recovery in the circumstances of the instant case.

Yet another principle, referred to and relied on by the circuit court, requires an affirmance of the judgment of that court. It is stated in 44 C.J.S., Insurance, Section 275(2) as follows: "* * * Even where there is a mistake and both parties act in good faith, yet where the mistake is that of the company or its agents and it reasonably induces the other party to believe that he is insured, the company is estopped to deny the existence of the insurance."

Though the majority opinion dismisses the question of fraud as having no significance, I can not do so. It certainly should have significance if considered with,

or as affecting, the question of estoppel. The very fact that defendant forwarded the first rider, relating only to poliomyelitis, direct to the policyholder, the plaintiff, but as to the rider offered as a defense, mailed its agent ''a quantity of riders'', none of which was ever delivered to plaintiff, in my view, establishes an intent to deceive and defraud. This, considered along with the statements of defendant quoted above, and its actions detailed above, clearly shows actual fraud on its part. I can not believe that a scheme so devised, designed and executed as to deceive the most experienced and learned, especially where perpetrated in the field of insurance, should be countenanced or treated lightly.

I am authorized to say that Judge Browning joins in the views expressed herein. We would affirm the judgment of the Circuit Court of Kanawha County.