UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THE BURLINGTON INSURANCE
COMPANY,
<u>Plaintiff-Appellant,</u>

v.

MILDRED R. SHIPP, d/b/a New
Sunnyside Tavern,                                        No. 98-2722
<u>Defendant-Appellee,</u>

and

ROBERT A. MORRIS; PATRICIA M.
MORRIS,
<u>Parties in Interest.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
W. Craig Broadwater, District Judge.
(CA-96-10-3)

Argued: January 24, 2000

Decided: May 15, 2000

Before NIEMEYER, Circuit Judge, Deborah K. CHASANOW,
United States District Judge for the District of Maryland,
sitting by designation, and Andre M. DAVIS,
United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion. Judge Niemeyer wrote
a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** David Francis Nelson, SCHUMACHER, FRANCIS, STENNETT & NELSON, Charleston, West Virginia, for Appellant. Michael Douglas Lorensen, BOWLES, RICE, MCDAVID, GRAFF & LOVE, Martinsburg, West Virginia, for Appellee. **ON BRIEF:** R. Ford Francis, SCHUMACHER, FRANCIS, STENNETT & NELSON, Charleston, West Virginia, for Appellant. F. Samuel Byrer, NICHOLS & SKINNER, L.C., Charles Town, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Burlington Insurance Company appeals the district court's denial of its motion for judgment as a matter of law following a jury trial on the issue of whether its insured, Mildred Shipp, d/b/a New Sunnyside Tavern, had a reasonable expectation of insurance coverage under her general liability policy for liability arising out of an assault and battery that occurred in her tavern. For the reasons that follow, we affirm.

I

Mildred Shipp owns the New Sunnyside Tavern (the "Tavern") in Marlowe, West Virginia. In late April 1993, Shipp contacted insurance agent Elmo Bennett about obtaining a general liability policy for the Tavern. Bennett called an underwriter at Mountaineer Insurance Group, a licensed insurance broker, to obtain a quotation on a policy for Shipp. The underwriter, Lester Long, took the necessary information from Bennett and generated a quotation for a Burlington Insurance policy.

On May 7, 1993, Shipp went to Bennett's office to complete an application for the policy. Shipp asked Bennett about the scope of her coverage, and Bennett told Shipp she was covered for everything except theft and liability arising out of the drunk driving of a patron. Shipp gave Bennett a premium down payment for the policy and left Bennett's office believing she had insurance for the Tavern. Bennett contacted Mountaineer that same day and advised Long that he had an application and premium down payment from Shipp. On the basis of this information, Long told Bennett he would bind coverage for a policy with Burlington. Mountaineer issued a policy binder on May 7, 1993, and faxed only the first page of the binder to Burlington. Bennett and Shipp were not sent a copy of the binder. Although brokers sometimes note policy exclusions on binders, Mountaineer did not note any exclusions on Shipp's binder.

On May 14, 1993, Robert Morris was injured at the Tavern when he was assaulted by another patron with a pool cue. Shortly after the incident, Shipp went to Bennett's office and told him about the assault on Morris. Shipp asked Bennett whether she would have any problems with her insurance coverage. Bennett told her the insurance was effective as of the date she made her down payment, May 7, 1993, and that she had nothing to worry about.

Mountaineer did not actually generate Shipp's policy until June 7, 1993. The policy prepared by Mountaineer contained the following assault and battery exclusion:

> It is agreed and understood that this insurance does not apply to bodily injury or property damage arising out of assault and battery or any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation of the insured, his employees, patrons or any other person.

A copy of the policy was sent to Bennett on June 10, 1993. Shipp testified that she never received a copy of the policy and was not otherwise informed of the assault and battery exclusion.

Morris later sued Shipp in the Circuit Court of Berkeley County, West Virginia, for the injuries he sustained in the assault at the Tav-

3

ern. After she was served with the complaint, Shipp attempted to contact Bennett to notify him of the suit. Bennett, however, had suffered a severely disabling stroke in the meantime, and his office had closed. Through Bennett's wife, Shipp was able to identify Mountaineer, who directed Shipp to Burlington. Relying on the assault and battery exclusion in Shipp's policy, Burlington refused to indemnify or defend Shipp against Morris' claim. Burlington then filed a declaratory judgment action in the United States District Court for the Northern District of West Virginia seeking a determination that it had no duty to indemnify or defend Shipp.

Both Burlington and Shipp filed motions for summary judgment in the district court. At the pre-trial conference held six days before trial, the district court ruled as follows on the parties' motions: (1) the assault and battery exclusion in the insurance policy was clear and unambiguous as a matter of law; (2) the case would proceed to trial on the sole issue of whether Shipp had a reasonable expectation of coverage for assault and battery claims based on her contact with Bennett; and (3) Bennett would be considered Burlington's agent for purposes of the litigation. After the court denied Burlington's motion in limine to preclude Shipp from testifying about statements Bennett made to her regarding policy coverage and exclusions, Burlington sought leave to amend the trial witness list to include Bennett. Following argument by counsel, the court denied Burlington's request.

The case was tried before a jury on February 10-11, 1998. Burlington moved for judgment as a matter of law following the presentation of Shipp's case and at the conclusion of its evidence. The court denied the motions. The jury returned a verdict finding that Shipp had a reasonable expectation of insurance coverage for liability arising out of the assault and battery that occurred in the Tavern. Burlington filed a timely motion pursuant to Federal Rule of Civil Procedure 50(b) for judgment as a matter of law or, in the alternative, for a new trial, which the court denied. Burlington's Rule 50(b) motion raised the following arguments, which are now before this court on appeal: (1) the district court erred in permitting Shipp to rely on the doctrine of reasonable expectations to establish coverage when the insurance policy clearly and unambiguously excluded coverage for the type of loss claimed by Shipp; (2) the district court abused its discretion in denying Burlington's request to call Bennett as a witness; and (3) the dis-

4

trict court erred in ruling that Bennett was Burlington's agent as a matter of law.

II

We first address Burlington's argument that the district court erred in allowing the jury to find a reasonable expectation of insurance coverage when the court had already ruled that the policy exclusion for assault and battery claims was clear and unambiguous. Burlington contends that the doctrine of reasonable expectations is a principle of construction that applies only when the insurance contract is ambiguous. We review the district court's denial of Burlington's Rule 50(b) motion for judgment as a matter of law de novo, viewing the evidence in the light most favorable to the prevailing party and drawing all reasonable inferences in her favor. Konkel v. Bob Evans Farms, Inc., 165 F.3d 275, 279 (4th Cir.), cert. denied, 120 S. Ct. 184 (1999).

In West Virginia, "the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." National Mut. Ins. Co. v. McMahon & Sons, Inc., 356 S.E.2d 488, 495 (W. Va. 1987). The doctrine of reasonable expectations places the burden on the insurer to communicate coverage and exclusions of a policy to the insured accurately and clearly. See id. at 496 ("An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured." (citations omitted)). Generally, an insured cannot have an objectively reasonable expectation of coverage when his policy clearly and unambiguously excludes coverage. See Soliva v. Shand, Morahan & Co., 345 S.E.2d 33, 36 (W. Va. 1986). The doctrine of reasonable expectations, therefore, is ordinarily limited to those instances in which the policy language is ambiguous. McMahon, 356 S.E.2d at 496. The West Virginia Supreme Court of Appeals, however, has extended the doctrine beyond circumstances involving ambiguous policy language.

An insured may have a reasonable expectation of insurance coverage when the policy provision on which a denial of coverage is based,

although clear and unambiguous, was never communicated to the insured. The West Virginia Supreme Court of Appeals refused to apply an uncommunicated policy exclusion in Romano v. New England Mutual Life Insurance Co., 362 S.E.2d 334 (W. Va. 1987). In Romano, Mr. Romano enrolled in a group life insurance plan through a local insurance agent. The promotional materials provided to Mr. Romano stated that "[a]ll employees who work 30 hours or more a week are covered under the program" and that the policy was effective as of July 1, 1978. Id. at 336. There was no mention of policy conditions or additional requirements for eligibility.

Mr. Romano was hospitalized for a myocardial infarction on June 26, 1978, and died on July 2, 1978, one day after the master policy became effective. Mr. Romano was not provided with a copy of the master policy or a certificate of insurance prior to his death. The insurer told Mr. Romano's son that coverage was unavailable for Mr. Romano under the group life policy because he was not "actively at work" on July 1, 1978, a condition precedent to coverage under the policy. Mr. Romano's son later discovered that the "actively at work" condition was not included in the materials given to his father when he purchased the policy, and sued for coverage. The court held that the "actively at work" condition stated in the master policy would not bar coverage. The court stated:

> The only eligibility requirement to which Mr. Romano was specifically alerted by the materials was full-time employment status. We believe the materials issued by New England were such as to lead Mr. Romano to a reasonable and honest belief that he was covered under the policy. It would, we believe, be inequitable to permit New England to enforce the more onerous policy condition where previous communications with the insured suggested its nonexistence.

Id. at 340.

The court reached a similar conclusion in Keller v. First National Bank, 403 S.E.2d 424 (W. Va. 1991). In Keller, Mrs. Keller purchased credit life insurance in connection with a loan she obtained from First National Bank. The note for the loan and the credit life

6

insurance were subsequently renewed by the bank. Mrs. Keller initialed the renewal note to accept the insurance coverage. The note contained a $150 charge for the insurance. Mrs. Keller's health had deteriorated since the initial policy period, however, and the credit life insurance was renewed in error. Although the bank then canceled the charge for the insurance, the bank did not notify the Kellers in writing that the life insurance would not be issued or that the insurance charge had been deducted from the principal financed. The monthly payments required by the renewal note remained the same, and the Kellers were not given a new renewal note.

Mrs. Keller died during the term of the renewal note. The insurer refused to pay any insurance benefits, claiming that no insurance was in effect when Mrs. Keller died. The court disagreed, holding that:

> Most people expect insurance once they pay the premium, but in the present case, even though the premium was paid, insurance was denied. In order to eliminate an insured's doubt about coverage, we find that once an insurer creates a reasonable expectation of insurance coverage, the insurer must give the coverage or promptly notify the insured of the denial. . . . Under this rule, once an insurer creates a reasonable expectation of insurance coverage, the insured is assured of coverage or a prompt notice of denial, which would give the insured the opportunity to seek other ways of limiting the risk.

Id. at 427.**1**

In this case, Shipp inquired as to the scope of her coverage when she applied for the Burlington policy. Bennett told her she was covered for everything except theft and drunk driving. After the incident in which Morris was injured, Shipp went to Bennett to make sure she was covered, and Bennett told her not to worry because the incident was covered by her policy. Shipp's policy containing the assault and battery exclusion was generated more than three weeks after Morris

_____

**1** Burlington's reliance on Robertson v. Fowler, 475 S.E.2d 116 (W. Va. 1996), is misplaced. Robertson did not involve an uncommunicated exclusion or condition of coverage and is therefore inapposite.

7

was injured in the Tavern, and the policy was never sent to Shipp. Bennett's representations to Shipp were sufficient to create a reasonable expectation of coverage. Romano and Keller make clear that Shipp's reasonable expectation of coverage could not be negated as a matter of law by a clear and unambiguous policy exclusion that was never communicated to her.**2** Thus, we find that the district court did not err in permitting Shipp to rely on the doctrine of reasonable expectations to establish coverage for Morris' claim against her.

_____

**2** The dissent's conclusion that Shipp could not, as a matter of law, have a reasonable expectation of coverage is based on the premise that the assault and battery exclusion is a so-called"standard" policy exclusion. The evidence before the jury, however, was conflicting on precisely that point. Prior to trial, the court denied Shipp's motion in limine to prevent Burlington from introducing testimony about the exclusion. Joint App. at 135, 432. The colloquy indicated that both parties, and the court, were treating the matter as one of evidence for the jury to consider in resolving the reasonable expectations issue. At trial, the testimony of witnesses for both sides touched on the issue, with it being uncontradicted that Shipp's immediately preceding standard line policy from American States did not exclude assault and battery coverage. Joint App. at 310-17. Thus, while it might be Burlington's "standard" exclusion, and indeed standard in many excess line policies, it was possible for the jury to have found that the exclusion was not "standard" in Shipp's experience or in the insurance industry as a whole.

The dissent also suggests that affirmance in this case is "judicially irresponsible" because we are creating insurance coverage based on general assurances that were contrary to the terms of the written policy. It must be remembered, however, that we are only upholding the jury's determination that Shipp had a reasonable expectation of coverage, and not deciding as a matter of law that there will always be coverage under the circumstances presented here. Based on all of the evidence before it, the jury concluded, as a matter of fact, that Shipp had a reasonable expectation of coverage for the incident at the Tavern despite the assault and battery exclusion in the undelivered policy. Neither the trial jury, nor this court, had before it any issue with regard to other"standard" exclusions for nuclear disaster or pollution damage. Under the circumstances of this case, it was for the jury and not the court to decide whether Shipp was entitled to coverage.

III

Burlington next argues that the district court erred in barring Burlington from calling Bennett as a trial witness. Burlington did not list Bennett in the joint pre-trial order, but sought to add him as a witness six days before trial after the court ruled that Shipp could testify about statements Bennett made to her regarding policy coverage and exclusions.

Federal Rule of Civil Procedure 26(a)(3)(A) requires that a party disclose to other parties the name, address and telephone number of each witness it (1) expects to call at trial and (2) may call if the need arises. Unless otherwise directed by the court, this disclosure must be made at least thirty days before trial. Id. A party who without substantial justification fails to disclose information in compliance with Rule 26(a) "shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). "The determination of whether a Rule 26(a) violation is [substantially] justified or harmless is entrusted to the broad discretion of the district court." Mid-America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1363 (7th Cir. 1996); see Adalman v. Baker, Watts & Co., 807 F.2d 359, 369 (4th Cir. 1986). In exercising that discretion, a district court is guided by the following factors: (1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony. Adalman, 807 F.2d at 369; see also Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999) (listing similar factors to be considered by trial court under Rule 37(c)(1)); United States v. $9,041,598.68, 163 F.3d 238, 252 (5th Cir. 1998) (same).

Burlington knew as early as September 1996 that Shipp was relying on Bennett's representations about policy exclusions to establish her right to coverage for Morris' claim, and thus knew of Bennett's importance as a witness. Burlington claims that at the time the joint pre-trial order was submitted to the court, it had information that Bennett was incompetent or that taking his deposition would pose a health

9

risk. Through additional investigation conducted after the joint pre-trial order was filed, Burlington learned that Bennett was able to understand and answer "yes or no" questions, and remembered issuing a policy to Shipp and explaining the policy exclusions to her. Burlington then sought to add Bennett as a witness when the court denied Burlington's motion in limine and ruled that Shipp could testify about statements Bennett made to her regarding policy exclusions. Burlington does not explain, however, why it could not have listed Bennett as a witness when the pre-trial order was filed and simply not called him as a witness if he was later determined to be incompetent. Furthermore, hoping that Bennett's testimony would not be needed because the court would grant Burlington's motion in limine to preclude testimony about statements Bennett made to Shipp is not a sufficient explanation for failing to name a witness before trial. Thus, there was not substantial justification for Burlington's failure to list Bennett as a witness, and Burlington could call Bennett only if the district court found that the failure to disclose was harmless.

At the pre-trial conference, the district judge discussed the potential impact of adding Bennett as a witness less than a week before trial:

> The case now becomes almost a trial within a trial about his competency, taking the deposition, perhaps even throwing it back to the Shipp side of the case to run and scramble and get somebody to say whether or not he was medically able to give opinions and just all of the other things I know about a stroke victim. That is the big problem here. And then how do you weigh the type of testimony that would have to be drawn from him by giving him these, we are going to have to admit, fairly technical and perhaps even legal type questions and having him answer in the yes or no.

Thus, the district court found that permitting Bennett to testify would have unduly disrupted the trial, as well as Shipp's pre-trial preparation, while yielding testimony that would be marginally useful to the finder of fact. Based on these findings, we conclude that the district court did not abuse its discretion in refusing to allow Burlington to add Bennett as a witness six days before trial. **3**

_____

**3** We note that the district court also had the discretion to deny Burlington's request to add Bennett as a witness because of the threat to his

10

IV

Burlington's final argument is that the district court erred in ruling that Bennett was Burlington's agent as a matter of law. The district court's ruling was based on West Virginia Code § 33-12-23, which provides:

> Any person who shall solicit within this State an application for insurance shall, in any controversy between the insured or his beneficiary and the insurer issuing any policy upon such application, be regarded as the agent of the insurer and not the agent of the insured.

W. VA. CODE § 33-12-23 (1996). Burlington does not dispute that Bennett solicited an application for insurance from Shipp. Burlington contends, however, that § 33-12-23 was not intended to apply to Bennett and Burlington in this case.

Burlington argues that to understand the intended scope of § 33-12-23, it must be read in conjunction with accompanying code sections relating to insurance agents, brokers, solicitors and excess line carriers. Relying on other code sections, Burlington argues that an insurance agent must be appointed as an agent by an insurer to be "regarded as the agent of the insurer" under § 33-12-23.[4] Because

_____

health. The court referred to information provided by Bennett's doctor that Bennett had "apparently significant loss of speech [and] right side loss of motor functions," and that interviewing him or taking his deposition "would cause an emotional state that would probably put him at risk of medical problems."

[4] Burlington relies principally on West Virginia Code § 33-12-19, which provides, in pertinent part:

> (a) An agent may not accept any risk, place any insurance or issue any policy except with an insurer licensed in this state and for which insurer such agent has been appointed and licensed.
>
> (b) An agent may not accept any contract of insurance from any broker not licensed in this state.
>
> (c) An agent may not employ or accept services of any solicitor not duly appointed and licensed as solicitor for such agent.

11

Bennett was never appointed as Burlington's agent, Burlington claims that Bennett cannot be considered Burlington's agent under § 33-12-23.

Burlington's argument is based on the principle of statutory construction under which "statutes [that] relate to the same subject matter should be read and applied together, i.e., in pari materia, so that the Legislature's intention can be gathered from the whole of the enactments." Smith v. State Workmen's Compensation Comm'r, 219 S.E.2d 361, 365 (W. Va. 1975). The rule of in pari materia, however, is applied only to resolve an ambiguity in a statute. Kimes v. Bechtold, 342 S.E.2d 147, 150 (W. Va. 1986) ("This in pari materia rule of statutory construction applies, of course, only when the particular statute is ambiguous."). Section 33-12-23 is clear and unambiguous, Knapp v. Independence Life & Acc. Ins. Co., 118 S.E.2d 631, 635 (W. Va. 1961), and provides that "any person who shall solicit . . . an application for insurance shall . . . be regarded as the agent of the insurer," W. Va. Code § 33-12-23 (emphasis added). It is undisputed that Bennett solicited an application from Shipp for a Burlington insurance policy. Nothing more is required to bring Bennett and Burlington within the operation of § 33-12-23. See Knapp, 118 S.E.2d at 635 ("It is obvious from the clear and unambiguous language of the statute that the solicitor of the application for insurance should be regarded for all purposes as the agent of the insurer in any controversy between it and the beneficiary."); see also Smithson v. United States Fidelity & Guar. Co., 411 S.E.2d 850, 858-59 (W. Va. 1991). Thus, we find no error in the district court's application of the statute in this case.

_____

> (d) An agent may not solicit, market, sell or transact any business of any kind on behalf of any insurer until after the agent has been appointed as agent for that insurer pursuant to the provisions of this article and such appointment has been approved by the commissioner of insurance.
>
> . . .

Burlington also cites sections 33-12-10 and 33-12-13, which relate to excess line insurance and the licensing of excess line brokers.

12

V

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

NIEMEYER, Circuit Judge, dissenting:

The majority as well as the parties agree in this case that Mildred Shipp's insurance policy contained a provision that excluded coverage for her liability arising from assaults among patrons of her tavern. This was a standard assault-and-battery exclusion included in the form of the policy. Yet the majority affirms coverage based on the general statements made to Shipp by her insurance agent that her policy from Burlington Insurance Company covered everything except theft and liability arising out of the drunk driving of a patron. The majority thus would leave standing a finding that impermissibly construes the agent's statement that everything was covered to provide Shipp with coverage for assaults -- and presumably anything else -- notwithstanding the policy's language, because Shipp could have a reasonable expectation of coverage for "everything."

Burlington's policy has, in addition to the standard exclusion for assault and battery, other exclusions such as those for nuclear disaster, for liability assumed by contract, for worker's compensation risks, for pollution damage, and others. If the agent's representation that everything was covered includes all conceivable risks, the premiums would have to exceed the value of Shipp's business itself.

To avoid the absurdity of such a position, Shipp argues in her brief that she and the insurance agent understood coverage to be that of "a general liability policy." Appellee's brief at 2. But this argument fails to provide the basis for distinguishing nuclear-disaster and pollution-damage exclusions -- exclusions which Shipp's counsel agreed, at oral argument, would apply -- from the assault-and-battery exclusion. Each was a standard exclusion to "a general liability policy."

It is, I respectfully suggest, judicially irresponsible to leave standing a finding of insurance coverage on so generalized an assurance as

13

that which was provided here. It is even more remarkable when one recognizes that the insurance agent who made the general statements about coverage was an independent agent and not an employee of Burlington Insurance Company. I would conclude that we must construe the policy's coverage in accordance with its written terms and that general and unspecified assurances by an independent agent cannot, as a matter of law, modify those specific written terms, even under a liberal application of West Virginia's doctrine of reasonable expectations. Therefore, I would reverse.

14