# CHARLESTON.

GRACE JOHNSON *v.* DIXIE FIRE INSURANCE COMPANY

(No. 6518)

Submitted January 21, 1930.   Decided January 28, 1930.
(Rehearing denied March 3, 1930.)

*Claude L. Smith* and *J. E. Chilton,* for appellant.

*Brown, Jackson & Knight* and *Herman L. Bennett,* for appellee.

LIVELY, PRESIDENT:

The bill as amended and supplemented is mainly for the specific enforcement of a contract for fire insurance on a dwelling house now and at the time of the fire owned by plaintiff below (appellant) in the town of St. Albans in Kanawha county. The trial chancellor found by decree of March 28, 1929, that there was no such contract under the pleadings and evidence and dismissed the bills, and this appeal followed.

C. B. Johnson, the husband of appellant, owned the dwelling and lots in fee. In 1925 the appellant, his wife, instituted a divorce suit against him claiming a one-half undivided interest in the property. Pending that litigation the husband, on November 24, 1925, insured the house against loss by fire for three years in the Dixie Fire Insurance Company (hereinafter called the Insurance Company) for $2,500.00 and paid the premium. By decree of September 26, 1926, a divorce was granted and the wife was decreed a one-half undivided interest in the house and lots and a commissioner appointed to make a deed, which deed was duly made and admitted to record October 5, 1926. Soon thereafter plaintiff went to the insurance agents, Turner & Turner, and exhibited the decree and deed and asked for protection against fire on her one-half interest under the policy taken out by her husband on the entire property. The agents thereupon issued an endorsement to be attached to the husband's policy as follows: "The Dixie Fire Insurance Company hereby consents that the interest of C. B. Johnson as part owner of the property insured in this policy be assigned to Grace Johnson.

This policy to cover in her name only. Turner & Turner, Agent.'' This writing bears date October 26, 1926, was received by West Virginia Fire Underwriters' Association October 27, 1926, and received through the latter by the Insurance Company October 28, 1926. Plaintiff claims to have paid the agents $5.00 for this writing so attached. Both members of the agency deny exacting or receiving $5.00 for this service. On October 23, 1926, C. B. Johnson, the husband, conveyed indirectly to plaintiff his one-half undivided interest in the property. Later, plaintiff again went to the agents and requested $4,500.00 on the property. Whereupon they issued to her a $2,000.00 policy in Queen Insurance Company of America, and they say the above endorsement consenting to assignment of the C. B. Johnson policy was issued. The agents say that the writing made when she first came to them (then she owned one-half undivided interest) was to consent to a transfer to her by the husband for so much of the policy as would cover her one-half interest she had then acquired. That writing is not in evidence. At the time the Queen Insurance Company policy was issued to her she paid the agent $20.00 which they say was the only money ever paid to them by her and which was to pay and did pay the premium on Queen Insurance policy. The husband had always had the possession of his policy, had never consented to a transfer of it, in fact had refused to do so, and about the first of December, 1926, sent it through another agency which had succeeded Turner & Turner, the former agents of defendant, to defendant Insurance Company for cancellation, and it was then cancelled. The unearned premium of $15.00 was then paid him. On December 26, 1926, the house was destroyed by fire. Demand was made for payment of the insurance under the husband's policy. It was refused, and this suit followed, on the theory as finally developed by the amended and supplemental bills that there was an agreement between the agents and Mrs. Johnson that a policy would be issued to her.

The two members of the agency say they made no agreement with plaintiff other than that evidenced by the endorse-

ments authorizing and consenting to a transfer of the policy issued to the husband. It is quite evident that Mrs. Johnson, plaintiff, was under the impression that she either had a contract for a policy, or was protected by the endorsements which she thought gave her the right of protection under her husband's policy. She says she paid for that protection. As above stated, there is a flat denial of any payment other than for the Queen Policy premium. The lower court's finding of fact in that regard cannot be reversed by this Court. Passing over the point insisted upon and argued by defendant's counsel that the essentials of the alleged contract for insurance have not been shown, such as amount of insurance, the term it should run, the premium to be paid and the like, in order that a contract may be specifically enforced as exemplified in *Meadows* v. *Insurance Company*, 104 W. Va. 580, wherein it is said there must be a meeting of minds upon all the material and essentials of a valid contract before it may be specifically enforced; we logically come to consideration of the proposition whether there was a contract of any character for the issuance of a policy. An oral executory contract for insurance is valid and may be enforced in equity. *Craft* v. *Hanover Insurance Company*, 40 W. Va. 508, 21 S. E. 854. But here we have a sharp controversy over the existence of a contract, complete or incomplete in its essentials, and for valuable consideration. Both members of the agency, who, at the time of giving testimony, had long since severed connection with defendant as its agent, say no contract was made with plaintiff other than the consent that the husband's policy might be assigned to her. They were willing to accept her as the assured of their principal when the husband made the transfer. Without such consent the assignment and transfer by the husband would not have been binding on the insurer, for the policy provided that assignment of it before loss would make the entire policy void, unless otherwise provided by agreement in writing added thereto. An insurance company is vitally interested in the reliability and trustworthiness of the assignee, and whether the risk is greater with the assignee than with the assignor, the original holder

of the policy, hence the usual provisions for the insurer's consent to transfer to a particular person. We think the lower court was justified under the evidence and circumstances in finding that there was no contract for the issuance of a policy of insurance to plaintiff. That part of the prayer of the bill was properly denied. But it is insisted that even if that cannot be done, the prayer for general relief and the prayers of the original, amended and supplemental bills are broad enough to compel a re-issuance of the C. B. Johnson policy for the benefit of appellant, and that the evidence and circumstances require that relief. As before observed, plaintiff may have thought she had a valid assignment of her husband's policy, but the paper which was delivered to her and on which she relies in conjunction with her understanding of the colloquy between her and the agent at the time, imports otherwise. The writing controls. It is unambiguous and is the repository of the meeting of the minds. The trial court was amply justified in finding that the consent of defendant to an assignment of the policy to plaintiff gave her no right under the policy until the assignment by her husband was made. A consent to an assignment of a contract is not the assignment.

The preponderance of the evidence is that there was neither a contract for a new policy, nor an assignment of the existing one standing for the benefit of the husband in case of loss by fire.

The decree will be affirmed.

*Affirmed.*