383 S.E.2d 298

## The FIRST NATIONAL BANK OF BLUEFIELD

v.

## Andrew L. CLARK and William L. Sheppard.

### No. 18132.

Supreme Court of Appeals of West Virginia.

April 21, 1989.

Rehearing Denied July 20, 1989.

Carl L. Fletcher, Jr., S, T, B & K, Charleston, for Andrew L. Clark.

Charles McElwee, Robinson & McElwee, Charleston, for First Nat. Bank of Bluefield.

MILLER, Justice:

Andrew L. Clark and William L. Sheppard, the defendants below, appeal from a summary judgment entered against them on January 7, 1987, by the Circuit Court of Mercer County. We find that there are issues of fact to be tried, and reverse the judgment.

## I.

The defendants were the sole partners in Chanticleer, a West Virginia partnership that proposed to construct twenty townhouse units in Princeton. They approached the Mercer County Commission sometime prior to December, 1981, to obtain financial assistance. On December 22, 1981, the Commission authorized the issuance of a $1,000,000 industrial development revenue bond to finance the Chanticleer project.

By letter dated February 3, 1983, the defendants inquired whether the First National Bank of Bluefield (Bank) wished to participate in the purchase of the bond. R.W. Wilkinson and Ronnie S. Kennett, officers of the Bank, met with the defendants to discuss the project and agreed to recommend the purchase to the Bank's discount committee. The defendants, at their request, consented to increase the size of the project by an additional five townhouse units.

On March 4, 1983, Kennett provided the defendants with the Bank's commitment letter. As outlined in the letter, the estimated cost of the project was $1,625,000. Of this sum, $625,000 was to be provided by a new limited partnership to be formed by the defendants. Kennett also expressed concern that Clark not incur personal liability, so as not to jeopardize existing lines of credit at the Bank. He, therefore, requested that the limited partnership be structured appropriately.[1]

The defendants responded promptly to the requests made by Kennett in the commitment letter. In the latter half of March, they incorporated Medical Park Townhouses, Inc. (MPT) to serve as general partner of the limited partnership. The defendants and their spouses were named as officers of the corporation. On April 1, 1983, "Medical Park Townhouses—1983 Limited Partnership" was formed. A maximum of twenty-five limited partnership "shares" were to be sold for a cash contribution of $25,000 each. Two of these shares were purchased directly by MPT.

The defendants experienced some difficulty in the sale of the partnership shares, and they discussed the problem extensively with representatives of the Bank. The defendants ultimately wrote to Wilkinson on August 31, 1983. The full text of the letter, the culmination of these discussions, read as follows:

"August 31, 1983

Mr. R.W. Wilkinson, President
First National Bank
P.O. Box 1559
Bluefield, WV 24701

Re: Medical Park Townhouse
Limited Partnership

Dear Buzzy:

As per your recent discussion with William L. Sheppard; please be advised that the General Partners of the Medical Park Townhouse Project will purchase all Limited Partnership shares *not sold.*

This project will be completed as outlined to you.

Sincerely,
Medical Park Townhouses

Andrew L. Clark, General Partner

William L. Sheppard, General Partner

ALC/WLS/mai" (Emphasis in original).

The financing for the project was finalized on September 16, 1983. A deed of trust and a promissory note in the principal sum of $1,000,000 were executed by the defendants for the limited partnership. These were assigned to the Bank in an instrument of even date.

Only thirteen of the townhouse units were completed by the defendants as planned. Payments on the promissory note became delinquent and, on April 7, 1986, the property was sold at auction as provided in the deed of trust. The Bank purchased the project for the sum of $525,000.

On July 19, 1985, the Bank filed this suit against the defendants individually. In its complaint, the Bank asserted that the August 31, 1983 letter from the defendants "memorialize[d] defendants [*sic*] commitment to plaintiff to assure an equity commitment of $625,000 to the Project by their agreement to purchase all limited partnership shares not sold in Townhouses at a price of $25,000 per share." The Bank requested either $625,000 in damages or specific performance of the contract.

On October 23, 1986, the Bank moved for summary judgment and attached to its motion affidavits by Kennett, Wilkinson, and an attorney involved in the financing. The

---

1. As relevant here, the Bank's commitment letter read:

"[A]s I discussed with you by telephone, our [d]iscount [c]ommittee is concerned that the limited partnership could possibly be structured in a manner that would cause you to be a personal guarantor in this issue. If you are a personal guarantor, we could not purchase the entire bond issue and keep credit lines available to you and your companies; therefore, you need to be sure the limited partnership is structured so this will not happen. After investigation into this matter, please inform us of your findings."

defendants responded to the motion with their own affidavits. Also provided by the parties were deposition transcripts and other discovery items.

On January 7, 1987, the circuit court entered summary judgment for the Bank. In its memorandum opinion, the court concluded as a matter of law that the "letter of August 31, 1983, from defendants to Wilkinson [was] a personal commitment by the defendants to purchase all partnership shares not sold." The court found that nineteen of the partnership shares remained unsold, and entered judgment for $475,000 plus interest.

## II.

Preliminary to a discussion of the merits, we consider whether this appeal must be dismissed as untimely. In its brief, the Bank renews its motion to dismiss [2] on the ground that the petition for appeal was not filed with our clerk within eight months from the entry of judgment. We find from the record that the judgment was entered on January 7, 1987, and that the petition was stamped "filed" by our clerk on September 11, 1987.

The defendants resist the motion on two alternative grounds. They contend first that the petition was filed in the office of the circuit clerk on September 8, 1987, and was, therefore, timely.[3] Even if the petition was untimely filed, they contend that this Court possesses the inherent authority to enlarge the time for appeal.

## A.

■ We turn first to the text of W.Va. Code, 58–5–4, the statute that fixes the time for filing an appeal. It reads, in relevant part: "No petition shall be presented for an appeal from, or writ of error or supersedeas to, any judgment, decree or order, whether the State be a party thereto or not, which shall have been rendered or made more than eight months before such petition is presented[.]" Rule 3(a) of the Rules of Appellate Procedure is drawn directly from this statute, and provides: "No petition shall be presented for an appeal from, or a writ of supersedeas to, any judgment, decree or order, which shall have been rendered more than eight months before such petition is presented, whether State be a party thereto or not[.]"

This case focuses on the unique phraseology of W.Va.Code, 58–5–4, which makes reference to the time when a petition for appeal is "presented." This word is not defined elsewhere in the statute and the parties, therefore, offer their own definitions. The defendants argue that a petition is presented when it is filed with the clerk of the circuit court, as required by our statutes and rules.[4] On the other hand, the Bank cites two cases which hold that a petition is not presented until it is filed with our clerk. *Snuffer v. Spangler*, 79 W.Va. 628, 92 S.E. 106 (1917); *Spangler v. Vermillion*, 80 W.Va. 75, 92 S.E. 449 (1917). These cases, decided under the nearly identical 1913 statute, W.Va.Code ch. 135, § 3,[5] merit some discussion.

2. Motions to dismiss the appeal were previously filed by the Bank on November 24, 1987, and December 16, 1987. These motions were denied without opinion.

3. Since September 7, 1987, was Labor Day, a legal holiday, it is not counted for purposes of computation of time. W.Va.Code, 2–2–3; Rule 16 of the Rules of Appellate Procedure.

4. A brief summary of our appeal procedure is appropriate. Review of a judgment rendered by a circuit court in a civil or criminal case is entirely discretionary. W.Va. Const. art. VIII, § 4. One who is aggrieved by such a judgment may petition for an appeal and assign errors therein. W.Va.Code, 58–5–3.
   A petition for appeal is filed, in the first instance, with the clerk of the circuit court in which judgment was entered. This filing enables the circuit clerk to prepare relevant portions of the record and to obtain the transcript. Once the record and transcript are prepared, they are transmitted with the petition to our clerk. W.Va.Code, 58–5–6.
   This procedure is also codified in Rules 4 and 4A of the Rules of Appellate Procedure.

5. W.Va.Code ch. 135, § 3 provided, in relevant part: "No petition shall be presented for an appeal from, or writ of error or supersedeas to, any judgment, decree or order, whether the state be a party thereto or not, nor to any judgment of a circuit court or municipal court rendered in an appeal from the judgment of a justice, which shall have been rendered or made more than one year before such petition is presented."

In *Snuffer*, a motion to dismiss was founded on the failure to timely transmit the appeal record. W.Va.Code ch. 135, § 17, provided that the appeal record was to be transmitted to our clerk within one year and two months of the judgment.[6] We read § 17 *in pari materia* with § 3, the time for appeal statute, and concluded: "[I]n a case where original papers are transmitted to the clerk of this court, these papers must be transmitted *and be in the hands of the clerk of this court, together with the petition for the writ of error or appeal,* within [the time allowed for appeal]." 79 W.Va. at 631, 92 S.E. at 107.

The dictum contained in *Snuffer* was reaffirmed that same year in *Vermillion*. In the *Vermillion* case, the petition for appeal was filed with our clerk two days after the appeal time lapsed. It was argued that since the petition was filed with the circuit clerk within the appeal time, it was timely presented for purposes of W.Va.Code, ch. 135, § 3. We specifically rejected this argument, and stated in Syllabus Point 2:

"The filing in the clerk's office of the circuit court of a petition for an appeal or writ of error and a bond, pursuant to section 5, chapter 135, of the Code of 1913 (sec. 4985), as amended by Laws 1915, c. 69, within the period of one year, will not excuse compliance with the provision of section 3, of said chapter (sec. 4983), or stop the running of the statute of limitations. Such petition must be presented to this court or to a judge thereof in vacation within one year from the date of the decree or judgment complained of."

We find *Vermillion* to be dispositive. While the time for appeal statute was amended subsequent to that decision, these amendments did not alter the requirement that the petition be timely "presented." It should be noted, however, that the statute was amended in 1973 to permit the circuit court to extend the appeal period by an additional four months.[7] We thus conclude that for a petition for appeal to this Court to be timely presented, for purposes of W.Va.Code, 58–5–4, and Rule 3 of the Rules of Appellate Procedure, it must be filed with the clerk of this Court within eight months of the entry of judgment or within such additional period, up to four months, as may be authorized pursuant to W.Va.Code, 58–5–4.

### B.

We next consider the effect of the untimeliness of the defendants' appeal. We have, in some of our cases, referred to the time limits contained in W.Va.Code, 58–5–4, as mandatory and jurisdictional. *E.g., Asbury v. Mohn,* 162 W.Va. 662, 256 S.E.2d 547 (1979); *State ex rel. Johnson v. McKenzie,* 159 W.Va. 795, 226 S.E.2d 721 (1976); *State v. Legg,* 151 W.Va. 401, 151 S.E.2d 215 (1966). In reliance on these cases, the Bank contends that the appeal must be dismissed.

The defendants argue that this Court possesses the inherent authority to enlarge the time for appeal. We find support for that proposition in our Rules of Appellate Procedure. Rule 2 provides that any of the requirements set out in the Rules may be suspended "[i]n the interest of expediting

**6.** This requirement, as modified, is now contained in W.Va.Code, 58–5–16. Under the new statute, the appeal record must be received by our clerk within eight months of the judgment.

**7.** The specific language of the amendment to W.Va.Code, 58–5–4, is:

"Provided, that the judge of the circuit court may, prior to the expiration of such period of eight months, by order entered of record extend and reextend such period for such additional period or periods, not to exceed a total extension of four months, as in his opinion may be necessary for preparation of the transcript, if the request for such transcript was

made by the party seeking such judicial review within sixty days of the entry of such judgment, decree or order. Such judge may also extend and reextend such period for such additional period or periods of time not to exceed a total extension of four months, upon petition made prior to the expiration of the initial eight month period for good cause shown and if the request for such transcript was made by the party seeking such judicial review within sixty days of the entry of such judgment, decree or order."

Similar language is embodied in Rule 3 of the Rules of Appellate Procedure.

decision, or for other good cause shown." [8] Furthermore, Rule 16(b) authorizes the Court to enlarge applicable time limits "for good cause shown." [9]

We recently discussed the interplay between the appeal time and the Rules of Appellate Procedure in *Department of Energy v. Hobet Mining & Constr. Co.*, 178 W.Va. 262, 358 S.E.2d 823 (1987), a case which dealt with the time limits applicable to certain administrative appeals. The State filed its petition for appeal six months out of time, accompanied by a written motion for enlargement of time. We dismissed the appeal in *Hobet* as untimely, but made it clear that enlargements of time were permissible:

"When read synoptically, Rules 2, 3 and 16 of the *Rules of Appellate Procedure* allow this court to suspend or enlarge the time period to file an appeal. However, all three rules require that good cause be shown to support any enlargement of time. These rules allow the court to take into account the parties' administrative problems such as lack of a transcript or the death or reassignment of an attorney." 178 W.Va. at 264, 358 S.E.2d at 825. [10]

*See also H.O. Anderson, Inc. v. Rose*, 177 W.Va. 419, 422 n. 7, 352 S.E.2d 541, 544 n. 7 (1986) (applying Rule 16(b) to entertain an appeal filed three days out of time).

We have not hesitated, in other contexts, to remove obstacles to appeal that have been viewed as jurisdictional in nature. Two recent cases are illustrative. In *Talkington v. Barnhart*, 164 W.Va. 488, 264 S.E.2d 450 (1980), we overruled a prior case holding that the failure to provide notice of the filing of the transcript in a civil case barred appellate review. While noting that "we expect counsel to comply with [the rule]," we refused to hold that noncompliance raised a jurisdictional defect. 164 W.Va. at 493, 264 S.E.2d at 453. Even more dramatic is our decision in *State ex rel. Johnson v. McKenzie, supra*, where, without any statutory authority, we gave approval to the practice of resentencing defendants so as to extend the time for filing criminal appeals. *See also State ex rel. Gary v. Warden, Huttonsville Correctional Center*, 169 W.Va. 421, 288 S.E.2d 176 (1982); *Rhodes v. Leverette*, 160 W.Va. 781, 239 S.E.2d 136 (1977).

■ We find also that courts in other jurisdictions have concluded that they possess the implied or inherent authority to enlarge the time for appeal fixed by statute. *Giordano Constr. Co. v. Ross*, 182 Conn. 577, 438 A.2d 772 (1980); *Lugar v. State ex rel. Lee*, 270 Ind. 45, 383 N.E.2d 287 (1978). We, therefore, hold that by virtue of Rules 2, 3, and 16 of the Rules of Appellate Procedure, this Court may, for good cause shown, suspend or enlarge the time within which a party may file a petition for appeal under W.Va.Code, 58–5–4. [11]

■ It remains to inquire whether the defendants have met the good cause requirement. We find that they have. Their

8. Rule 2 provides, in its entirety: "In the interest of expediting decision, or for other good cause shown, the Supreme Court may suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction. These rules shall be construed to allow the Supreme Court to do substantial justice."

9. Rule 16(b) provides in its entirety: "The Court for good cause shown may upon motion enlarge the time prescribed by these rules or by its order for doing any act, or may permit an act to be done after the expiration of such time."

10. *Hobet* also intimated that there are constitutional limits on the power to enlarge time imposed by W.Va. Const. art. V, § 1. 178 W.Va. at 265, 358 S.E.2d at 826. We do not have occasion today to discuss those limits.

11. The power of this Court to promulgate rules is stated in W.Va. Const. art. VIII, § 3: "The court shall have power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the State relating to writs, warrants, process[,] practice and procedure, which shall have the force and effect of law." Further recognition of this power is contained in W.Va. Const. art. VIII, § 8, "When rules herein authorized are prescribed, adopted and promulgated, they shall supersede all laws and parts of laws in conflict therewith, and such laws shall be and become of no further force or effect to the extent of such conflict." *See generally Stern Brothers, Inc. v. McClure*, 160 W.Va. 567, 236 S.E.2d 222 (1977).

petition was received by our clerk only three days beyond the appeal time and was soon followed by a formal motion for enlargement of time. Furthermore, the defendants acted under the bona fide, though mistaken, belief that filing their petition with the circuit clerk was sufficient under W.Va.Code, 58–5–4. We find these reasons to constitute good cause for the tardy filing, and elect to treat the petition as timely.

### III.

We turn now to the merits of the case. We are met at the threshold with an evidentiary question of prime importance. The Bank asserts that the August 31, 1983 letter from the defendants was the final expression of their contract to purchase the unsold partnership shares. We are, therefore, urged not to consider parol evidence in the construction of that letter.

■ Where the parties to a contract reduce the same to writing, and intend for the writing to be the final expression of their contract, parol evidence is inadmissible to vary the writing. We summarized this rule in Syllabus Point 1 of *W.L. Thaxton Constr. Co. v. O.K. Constr. Co.*, 170 W.Va. 657, 295 S.E.2d 822 (1982):

> " 'When a written contract upon its face is couched in such terms as to import a legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties and the extent of the undertaking were reduced to writing. Parol evidence will not be admitted to vary its terms.' Syllabus point 1, *Jones v. Kessler*, 98 W.Va. 1, 126 S.E. 344 (1925)."

■ To bar the admission of parol evidence, the writing must, in the words of *Thaxton*, be a final expression of the "legal obligation" of the parties and of the "object or extent of [their] engagement." We find no indication of finality in the August 31, 1983 letter. It consists of only two short sentences. It also makes explicit reference to matters outside of its four corners, viz., a "recent discussion" with one of the defendants and plans for completion of the project "as outlined to [the Bank]." We conclude, on the authority of *Thaxton*, that the letter is not a final expression of the contract between the defendants and the Bank. We are, therefore, free to consider parol evidence to discern the intention of the parties.

■ Obviously, the question of crucial importance to this case is whether the contract was made by the defendants personally or in a representative capacity. The defendants contend that MPT, the general partner, was to purchase the unsold partnership shares and that they endorsed the August 31, 1983 letter as officers of MPT. As they point out, the Bank had insisted that the limited partnership be structured such that Clark would not incur personal liability. In deposition testimony, the defendants stated that the import of discussions with Wilkinson in early 1983 was that liability under the contract would be assumed by MPT and not by the defendants personally.

It must also be borne in mind that neither Clark nor Sheppard was a general partner of the limited partnership. There was only one general partner, MPT. These facts were known to the Bank prior to the August 31, 1983 letter on which the Bank predicates its suit. In view of this knowledge, it is difficult to conceive how the Bank could have viewed the letter as anything more than a commitment of the general partner, MPT.

The Bank's version of the facts is in diametric opposition. In their affidavits, Wilkinson and Kennett state that the defendants were specifically advised that the financing would not be completed "without a written commitment by them individually" to purchase the unsold partnership shares. A personal commitment from the defendants was necessary to ensure the infusion of the additional $625,000 required to complete the project. The August 31, 1983 letter, in their view, provided that commitment.

■ There obviously exist divergent factual assertions which foreclose summary judgment under our settled rule contained

in Syllabus Point 3 of *Aetna Cas. & Sur. Co. v. Federal Ins. Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963):

"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

We, therefore, reverse the judgment of the Circuit Court of Mercer County and remand the case for further proceedings not inconsistent with this opinion.

Reversed and Remanded.