387 S.E.2d 109

**Thomas E. SMITH**

v.

**James D. BUEGE, Jackie V. Buege, Terrie W. Buege, Chong H. Buege, and the Prudential Insurance Company.**

No. 18606.

Supreme Court of Appeals of West Virginia.

Nov. 3, 1989.

---

206

Frank C. Mascara, Fairmont, for Thomas E. Smith.

David J. Janes, Tharp, Liotta & Janes, Fairmont, for James D. Buege.

Kenneth R. Miller, Furbee, Amos, Webb & Critchfield, Fairmont, for Prudential Ins.

McHUGH, Justice:

This appeal is by the plaintiff, a purchaser under an executory contract for the sale of improved real estate damaged by fire prior to closing of the sale. The purchaser contends that the defendants-vendors have failed to show the nonexistence of a dispute as to the amount of loss for which the purchaser, under the real-estate sales contract, is entitled to receive the fire insurance proceeds. We agree that summary judgment was improperly granted to the vendors by the Circuit Court of Marion County. We also agree with the purchaser that the defendant insurer was improperly dismissed from this action. We therefore reverse the rulings of the circuit court and remand this case for further proceedings.

**I**

On January 2, 1987, the plaintiff-appellant, Thomas E. Smith, and the defendants-appellees Bueges, entered into a real-estate sales contract, drafted by the plaintiff's attorney, whereby the plaintiff was to purchase certain improved real estate from the Bueges for $60,000.00 ($500.00 down, $59,500.00 at the closing). There were three buildings on the land: a two-story stucco dwelling house, a garage and a metal outbuilding. The contract contained a provision that if the real estate was damaged by a fire or other casualty loss prior to consummation of the sale, the plaintiff, at his option, could accept the property in the damaged condition along with the insurance proceeds or, alternatively, could cancel the contract.[1]

On February 22, 1987, prior to closing of the sale, the dwelling on the real estate in question was extensively damaged by a fire. According to the subsequent complaint, based upon the plaintiff's appraiser's report, there "may" have been a total loss. The defendants-Bueges' answer denied a total loss and in their answers to the plaintiff's interrogatories the Bueges asserted, based upon their insurer's adjuster's figures, that the pre-fire value of the dwelling was $35,000.00 to $40,000.00 and the post-fire value of the dwelling was $7,000.00 to $12,000.00.

The Bueges, in their answers to the plaintiff's interrogatories, stated that they by telephone notified their insurer, Prudential Insurance Company, of the real-estate sales contract, within one or two days after the fire. The face value of the insurance was $68,000.00.

By letter dated March 3, 1987, the plaintiff notified the Bueges that he still desired to purchase the property and that he was exercising his option to receive the insurance proceeds. By another letter dated March 3, 1987, the plaintiff's attorney notified Prudential Insurance of the real-estate sales contract and its terms as to the insurance proceeds.

After an investigation Prudential Insurance paid the Bueges the sum of $28,578.76 for the fire damage. This payment was on or about April 6, 1987.

By a letter dated April 6, 1987, the plaintiff advised the Bueges that he wished to have an independent appraisal of the fire damage and requested the Bueges to hold Prudential's settlement check and to refrain from executing a release. The Bueges did hold the settlement check and did refrain from executing a release.

1. The language of the pertinent paragraph of the real-estate sales contract is as follows:

8. Said property shall be delivered to the Buyer in as good a condition as it was upon the date of entering this agreement, including all buildings, improvements, fixtures, trees and shrubbery, except for fair wear and tear. In event any of the buildings and improvements are destroyed or substantially damaged by fire, or sustain other casualty loss, *the Buyer may, at his option, elect to accept the damaged property and any proceeds from payment of insurance thereon or settlement of claim therefore* [sic] in lieu of the property in its present condition, in which event the parties shall be [sic] complete the transaction as herein provided; or the Buyer may cancel the contract, at which time all sums paid by him to the Sellers shall be promptly returned, and the respective rights of the parties hereunder shall cease and terminate.
(emphasis added)

The plaintiff filed this declaratory judgment action against the Bueges and Prudential Insurance on April 28, 1987, to construe the parties' rights and obligations under the real-estate sales contract.

Prudential moved to dismiss the action as to it because it was not a party to the real-estate sales contract and had met its obligations under the insurance policy by investigating the fire damage and paying the amount of damages determined to the named insured. On July 1, 1987, the Circuit Court of Marion County ("the trial court") ordered Prudential to be dismissed from the action with prejudice for the reasons stated by Prudential in its motion to dismiss.

The Bueges moved for summary judgment "on the ground that there is no issue as to any material fact and that these defendants are entitled to judgment as a matter of law." The motion for summary judgment was based upon "all of the pleadings, exhibits and other documents filed herein." In a brief opposing such motion, the plaintiff precisely alleged that the Bueges had breached their common-law duty of good faith toward the plaintiff in negotiating the fire insurance settlement with Prudential.[2] The trial court, on September 2, 1987, granted the Bueges' motion for summary judgment because "there is no genuine issue as to any material fact and ... the defendants ... are entitled to a judgment as a matter of law."

## II

The primary issue in this case is whether the trial court improperly granted the defendants-Bueges' motion for summary judgment. We hold in the affirmative.

A motion for summary judgment must be "supported as provided in this rule[.]" *W. Va.R. Civ.P.* 56(e). Thus, a motion for summary judgment should ordinarily be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file," and "affidavits, if any," show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *W. Va. R. Civ.P.* 56(c). The burden of persuasion is upon the party moving for summary judgment to show that there is no genuine issue as to any material fact in the case. *Crain v. Lightner*, 178 W.Va. 765, 769, 364 S.E.2d 778, 782 (1987); *Lengyel v. Lint*, 167 W.Va. 272, 279, 280, 280 S.E.2d 66, 70, 71 (1981).

---

2. For a discussion of the common-law duty of good-faith performance and cooperation implicit in a contract see *Restatement (Second) of Contracts* § 205 (1979); 3 A. Corbin, *Corbin on Contracts* § 570 (1960); 11 S. Williston, *A Treatise on the Law of Contracts* § 1295 (W. Jaeger 3d ed. 1968); 5 S. Williston, *A Treatise on the Law of Contracts* § 670, at 159 (W. Jaeger 3d ed. 1961); Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 Harv.L.Rev. 369 (1980). *See also* syl. pt. 2, *Manning v. Bleifus*, 166 W.Va. 131, 272 S.E.2d 821 (1980) (a "subject to the approval of financing" clause in a real-estate sales contract requires a purchaser to make reasonable, good-faith efforts to obtain financing); syl. pt. 1, *Duncan Box & Lumber Co. v. Sargent*, 126 W.Va. 1, 27 S.E.2d 68 (1943) (an agreement to pay a preexisting debt when the promisor shall be "able to effect a sale of" certain real estate which he owns requires payment to be made upon the accrual of a reasonable time for accomplishing such sale).

In the present case the plaintiff-appellant asserts that the defendants-Bueges upon entering into the real-estate sales contract relinquished the opportunity to settle an insurance claim for substantial fire damage to the property without considering the appellant's interests, as the parties to the contract contemplated that an insurance settlement would be for the appellant's benefit. The appellant alleges that the defendants-Bueges failed to negotiate reasonably with Prudential so as to obtain a determination that there was a *total* loss from the fire damage, for the Bueges knew the insurance proceeds would ultimately be received by the appellant and not by them because the appellant had exercised his option to receive the insurance proceeds.

The Bueges assert that the appellant untimely raised the good-faith-performance issue by raising it in the appellant's brief in opposition to the Bueges' motion for summary judgment. However, the appellant's complaint vaguely raised this issue. For example, paragraph number 11 of the complaint states that the plaintiff-appellant was unable under the circumstances to determine whether there had been an equitable settlement of the insurance claim. Because the case is to be remanded due to an improper entry of summary judgment, the appellant, on remand, should be allowed to amend his complaint to set forth explicitly the good-faith-performance issue, so that the case can be tried and decided on the merits of that issue.

■ This Court recently explained the respective burdens of the movant and non-movant under Rule 56 of the *West Virginia Rules of Civil Procedure*. In *Crain v. Lightner*, 178 W.Va. 765, 769 n. 2, 364 S.E.2d 778, 782 n. 2 (1987), we set forth the following procedural principles. As stated previously, the burden is upon the party moving for summary judgment to show the nonexistence of a "genuine issue" as to a material fact. This burden has two distinct components: an initial burden of production, which may shift to the nonmovant, and an ultimate burden of persuasion as to the nonexistence of a "genuine issue," which burden always remains on the movant.

■ If the burden of persuasion on the merits at trial would be on the nonmovant, the movant may satisfy the burden of production under Rule 56 in either of two ways. First, the movant may submit affirmative evidence that negates an essential element of the nonmovant's case. Second, the movant may demonstrate to the trial court that the nonmovant has not mustered any evidence to establish an essential element of the nonmovant's case. Where the movant adopts this second option, the movant may not simply make the conclusory assertion that the nonmovant has no evidence. Instead, the movant must affirmatively show the absence of evidence in the record by reviewing for the court the affidavits, if any, discovery materials, etc.[3] *See also* M. Lugar & L. Silverstein, *West Virginia Rules of Civil Procedure* 430 (1960) (movant must *show* absence of genu-

ine issue as to material facts; nonmovant must produce sufficient evidence to upset movant's evidence of no genuine issue as to material facts); *Fed.R.Civ.P.* 56 advisory committee's note to 1963 amendment to subdivision (e) ("[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented").

■ From this discussion it is clear that a motion for summary judgment under *W.Va.R.Civ.P.* 56 must be denied when the moving party merely makes the conclusory assertion that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Justice White, providing the controlling fifth vote with his concurrence in *Celotex Corp. v. Catrett, see supra* note 3, states the point in this manner: "It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." 477 U.S. at 328, 106 S.Ct. at 2555, 91 L.Ed.2d at 277.

■ In the present case the defendants-Bueges' motion for summary judgment failed to identify any *specific* material fact for which there was an absence of a genuine issue. Their motion for summary judgment also did not identify with any specificity those portions of the record that demonstrate the absence of a genuine issue on any specific material fact. Finally, their motion failed to articulate why they were

---

**3.** The nonmovant who has the burden of persuasion on the merits at trial may defeat a motion for summary judgment which asserts that the nonmovant has no evidence by calling the court's attention to supporting evidence already in the record that was overlooked or ignored by the movant. In that event, the movant must attempt to demonstrate the inadequacy of this evidence to raise a genuine issue as to a material fact.

Once the movant attacks any record evidence which the nonmovant asserts is supporting, the burden of production shifts to the nonmovant, who must either (1) rehabilitate the evidence attacked by the movant, (2) produce additional evidence showing the existence of a genuine issue for trial or (3) submit an affidavit explain-

ing why further discovery is necessary as provided in Rule 56(f).

Summary judgment should be granted if the nonmovant fails to respond in one or more of these ways, or if, after the nonmovant responds, the court determines that the movant has shouldered the movant's ultimate burden of persuading the court that there is no genuine issue of material fact for trial.

As stated in *Crain v. Lightner*, our analysis of the respective burdens of the movant and non-movant under Rule 56 is based upon *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting as to the application of agreed principles to the facts therein, joined by Burger, C.J., and Blackmun, J.).

entitled to judgment as a matter of law. The motion for summary judgment was expressed merely in conclusory terms. The trial court should therefore have denied the motion.

Furthermore, the existing pleadings and discovery materials indicate that there is a genuine dispute as to a material fact, specifically, whether there was a *total* loss from the fire damage to the real property. If there was in fact a total loss, Prudential Insurance, under *W.Va.Code*, 33–17–9 [1957], should have paid the face value of the policy, $68,000.00, not $28,578.76 for a partial loss.[4]

For the reasons stated above, the trial court committed reversible error by granting the defendants-Bueges' motion for summary judgment.

### III

The next issue in this case is whether the trial court improperly dismissed Prudential Insurance from this action. We think it did.

*W.Va.Code*, 33–17–12 [1965] provides that payment of the proceeds under a fire insurance policy to the person(s) designated in the policy—or if the proceeds have been assigned and written notice of the assignment is given to the insurer, payment to the person(s) entitled to the proceeds under the assignment—fully discharges the insurer from all claims under the policy.[5] The appellant contends that the eighth para-

graph of the real-estate sales contract with the Bueges, *see supra* note 1, constituted an agreement by the Bueges to assign the fire insurance proceeds if, after a loss, the appellant exercised his option to receive the proceeds. The appellant also contends that his attorney's letter to Prudential Insurance containing the terms of the real-estate sales contract with respect to the fire insurance proceeds constituted written notice of the assignment, effective after the loss, of the proceeds. Therefore, the appellant finally contends that Prudential Insurance should have paid the proceeds to him under *W.Va.Code*, 33–17–12 [1965]. This Court agrees with these contentions of the appellant.

An "assignment" of a right is a manifestation of the assignor's intention to transfer such right, by virtue of which transfer the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance. *Restatement (Second) of Contracts* § 317(1) (1979). Unless required by statute or by contract, the assignor of a right may make an assignment by manifestation of intention to transfer, without any particular formality. *Restatement (Second) of Contracts* § 324 comment a (1979). This Court has recognized these concepts: "No formal words are necessary to make an assignment of a chose in action. Anything showing an intent to assign on the one side, and an intent to receive on the other, will operate as an

---

4. *W.Va.Code*, 33–17–9 [1957], known as the "valued policy law," provides in relevant part: "All insurers issuing policies providing fire insurance on real property situate in West Virginia, shall be liable, in case of total loss by fire or otherwise, as stated in the policy, for the whole amount of insurance stated in the policy, upon such real property[.]" The purpose of this statute was to prevent insurance companies from over-valuing the insured structure for premium purposes, thereby allowing them to collect an excess premium, and later contest the value when there is a loss. It was contemplated by the legislature that the insured would receive a windfall in certain cases and that the threat of this windfall would correct insurance companies' behavior in valuing the real property. *Filiatreau v. Allstate Insurance Co.*, 178 W.Va. 268, 271, 358 S.E.2d 829, 832 (1987).

5. The pertinent language of *W.Va.Code*, 33–17–12 [1965] is as follows:

Whenever the proceeds of or payment under a policy of fire insurance covering property located in West Virginia heretofore or hereafter issued becomes payable, and the insurer makes payment thereof to the person or persons designated in the policy or contract or if the proceeds have been assigned and written notice of such assignment given to the insurer, to the person or persons being entitled thereto by virtue of such assignment, such payment shall fully discharge the insurer from all claims under the policy or contract. The insurer may also discharge its liability by bringing an interpleader action and *properly* depositing payment into court. *See* syl. pt. 4, *Arcuri v. Great American Insurance Co.*, 176 W.Va. 211, 342 S.E.2d 177 (1986).

assignment. It [at common law] need not be in writing." Syl. pt. 5, *Bentley v. Standard Fire Insurance Co.*, 40 W.Va. 729, 23 S.E. 584 (1895). An "[a]ssignment of a chose is a sale like a sale of a chattel. There must be an intent to divest the seller of all right and title, and invest it in the assignee." *Id.* 40 W.Va. at 741, 23 S.E. at 587.

▮ Under these definitions the eighth paragraph of the real-estate sales contract here constituted an agreement by the Bueges (the assignors) to assign the fire insurance proceeds, which agreement became effective as an assignment of the proceeds, after the loss, when the appellant (the assignee) exercised his option to receive the proceeds, in lieu of rescinding the contract.

Prudential Insurance argues, however, that this assignment was not valid because it violated the provision in the policy that "[a]ssignment of this policy shall not be valid except with the written consent of" Prudential, which was absent here. It is true that a fire insurance policy is a personal contract depending upon the confidence reposed by the insurer in the owner of the property. *See Johnson v. Dixie Fire Insurance Co.*, 108 W.Va. 512, 515–16, 152 S.E. 11, 12 (1930); *Morgan v. American Central Insurance Co.*, 80 W.Va. 1, 8, 92 S.E. 84, 87 (1917); *Bentley v. Standard Fire Insurance Co.*, 40 W.Va. 729, 738, 23 S.E. 584, 586 (1895). Therefore, the typical fire insurance policy contains a provision either voiding the policy if an assignment thereof is made without the consent of the insurer, or, as far as the insurer is concerned, invalidating such assignment, or both. In syllabus point 1 of the seminal case in this jurisdiction on this point, *Stolle v. Aetna Fire & Marine Insurance Co.*, 10 W.Va. 546 (1877), the Court set forth the effect of a nonassignment clause in a fire insurance policy: "The courts will enforce a provision in a policy in an insurance against fire, prohibiting, under penalty of forfeiture of the insurance, a transfer of the policy *before* the loss occurs." (emphasis in original) The principle is stated in the following manner in syllabus point 4 of *Bentley v. Standard Fire Insurance Co.*, 40 W.Va. 729, 23 S.E. 584 (1895): "Where a policy of insurance provides that it shall be void if assigned without the insurer's consent, the clause applies to assignment before loss of the claim for damages in case of loss." *See also Johnson v. Dixie Fire Insurance Co.*, 108 W.Va. 512, 515, 152 S.E. 11, 12 (1930); syl. pts. 2–3, *Morgan v. American Central Insurance Co.*, 80 W.Va. 1, 92 S.E. 84 (1917).

▮ On the other hand, "[a]n assignment of a fire-insurance policy [or the proceeds] subsequent to the loss is valid regardless of the conditions of the policy." Syl. pt. 4, *Nease v. [Aetna] Insurance Co.*, 32 W.Va. 283, 9 S.E. 233 (1889). *See also Stolle v. Aetna Fire & Marine Insurance Co.*, 10 W.Va. 546, 552 (1877) (if policy attempts to prohibit transfer after loss, courts will not enforce such prohibition, as it is contrary to public policy allowing, generally, assignments of choses in action); 16 G. Couch, *Couch['s] Cyclopedia of Insurance Law* §§ 63:2, 63:40 (2d ed. M. Rhodes rev. 1983 & Supp.1988) (collecting cases); 5A J. Appleman & J. Appleman, *Insurance Law and Practice* §§ 3458, 3459 (1970 & Supp.1989) (collecting cases). Assignment, after loss, of the proceeds of insurance does not constitute an assignment of the personal contract represented by the policy, but only of a claim or right of action on the policy. *See, e.g., Windey v. North Star Farmers Mutual Insurance Co.*, 231 Minn. 279, 283, 43 N.W.2d 99, 102 (1950). Moreover, the recognized reason for the prohibition of assignments without the consent of the insurer, specifically, to protect the insurer against an increased risk resulting from the assignment, is not applicable after a loss because the liability of the insurer was already fixed by the loss prior to the effective date of the assignment, and like any other chose in action such liability is assignable regardless of the conditions of the policy in question. *See, e.g., Flint Frozen Foods, Inc. v. Firemen's Insurance Co.*, 12 N.J.Super. 396, 400–01, 79 A.2d 739, 741–42 (Law Div.1951), *rev'd on other grounds*, 8 N.J. 606, 86 A.2d 673 (1952); *Aetna Insurance Co. v. Aston*, 123 Va. 327, 333, 96 S.E. 772, 774 (1918).

■ The last cited case, involving an assignment of fire insurance proceeds by a real-estate sales contract, also distinguishes between an assignment and an agreement to assign. Under a fire insurance policy which provides that the policy shall be void if it is assigned before a loss, an actual assignment of the policy before a loss, without the consent of the insurer, will work a forfeiture, but a mere agreement to assign, not effective as an assignment until after the loss, is not a breach of the policy condition. *Id.* at 333, 96 S.E. at 774. *See also Moore v. Saint Paul Fire & Marine Insurance Co.*, 176 Iowa 549, 561, 156 N.W. 676, 680 (1916) (assignment of fire insurance policy which was not effective until after fire, though agreement to assign was dated prior to fire, did not defeat policy; real estate purchasers-assignees decided, after fire, to accept damaged house and fire insurance proceeds).

■ In the case now before us there was an agreement to assign the fire insurance proceeds which was not effective as an assignment until after the loss when the appellant-assignee decided to accept the damaged dwelling and the fire insurance proceeds, rather than rescinding the contract. Prudential Insurance had written notice of this post-fire assignment of the fire insurance proceeds prior to remitting the same to the Bueges, the assignors. Therefore, under *W.Va.Code*, 33–17–12 [1965], Prudential was required to remit the fire insurance proceeds to the appellant-assignee (or to pay the proceeds properly into court in an interpleader action brought by Prudential). Prudential, instead, wrongfully paid the proceeds to the Bueges, the assignors. Accordingly, the trial court improperly dismissed Prudential from this action.

Prudential's reliance upon this Court's opinion in *Arcuri v. Great American Insurance Co.*, 176 W.Va. 211, 342 S.E.2d 177 (1986), is misplaced. There, based upon *W.Va.Code*, 33–17–12 [1965], we held that the fire insurance proceeds should have

been paid to the real-estate vendors, who were the only persons properly designated as the insureds in the policy. *Arcuri* is materially distinguishable from this case because, unlike here, there was no assignment of the fire insurance proceeds to the real-estate purchaser in *Arcuri;* in fact, the purchaser there was required by the real-estate sales contract to obtain fire insurance naming the real-estate vendors as the insureds, pending full payment of the sales price of the realty.

Similarly, Prudential's reliance upon *Aetna Casualty & Surety Co. v. Cameron Clay Products, Inc.*, 151 W.Va. 269, 151 S.E.2d 305 (1966), is also misplaced. In that case, unlike here, there was no assignment of the fire insurance proceeds to the real-estate purchaser. The Court held that the real-estate vendor was entitled to the proceeds from the insurer as the insured.[6]

Based upon the foregoing, the trial court committed reversible error by dismissing Prudential Insurance from this action.

## IV

The final issue in this case is whether this appeal was timely filed with respect to Prudential Insurance within eight months after the final order of the trial court. We believe it was.

■ Pursuant to the relevant portion of *W.Va.R.App.P.* 3(a), "[n]o petition shall be presented for an appeal from ... any judgment ... which shall have been rendered more than eight months before such petition is presented[.]" *See also* syl. pt. 1, *First National Bank v. Clark*, 181 W.Va. 494, 383 S.E.2d 298 (1989); *W.Va.Code*, 58–5–4 [1973]. It is necessary to apply *W.Va. R.Civ.P.* 54(b) to determine whether the appeal with respect to Prudential was presented timely. Stated concisely, under *W.Va.R.Civ.P.* 54(b), an order relating to less than all of multiple parties is not a final, appealable judgment unless the order expressly states that is a final order and contains an express determination that there is no just reason for delay in final

---

6. There is no mention of *W.Va.Code*, 33–17–12 [1965] in *Aetna Casualty & Surety Co. v. Cameron Clay Products, Inc.;* the real-estate sales contract in that case was dated during the year 1964, prior to the enactment of that statute in 1965.

adjudication of the rights and liabilities in question.[7]

 The order dismissing Prudential did not state that it was a final order and did not contain an express determination that there was no just reason for delay in final adjudication of Prudential's liability to the appellant. The final judgment was not entered until the September 2, 1987 order as to the Bueges, the remaining defendants. This appeal was presented to the Clerk of this Court on May 2, 1988, exactly eight months later, and was therefore timely filed with respect to the Bueges and Prudential.[8]

### V

In accordance with all of the above, this Court reverses the rulings of the trial court and remands this case for further proceedings.

Reversed and remanded.

---

**7.** The language of *W.Va.R.Civ.P.* 54(b) is:

(b) *Judgment upon multiple claims or involving multiple parties.*—When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

**8.** Because the appeal was timely filed, there is no issue as to whether we should enlarge the time for filing the appeal, for good cause shown. *See* syl. pt. 2, *First National Bank v. Clark*, 181 W.Va. 494, 383 S.E.2d 298 (1989).